**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re DEFERRAL of TAXES. No. 70–347.**

United States District Court,
E. D. Pennsylvania.

Oct. 26, 1970.

Robert W. Blanchette, New Haven, Conn., Counsel for the Trustees of the Penn Central Transportation Company.

Blank, Rome, Klaus & Comisky by Edwin P. Rome, Philadelphia, Pa., Special Counsel for the Trustees of the Penn Central Transportation Company.

Herbert Smolen, Asst. City Sol., for the City of Philadelphia.

Fox, Rothschild, O'Brien & Frankel by Israel Packel, Philadelphia, Pa., for First National City Bank of New York.

John M. Abdalla, Jefferson County Treasurer, for Jefferson County, Ohio.

Anthony X. Arturi, Fort Lee, N. J., for the Town of West New York, N. J.

Americo Campanella, Asst. Atty. Gen., for the State of Rhode Island and its municipalities.

Francis A. Barry, Pittsburgh, Pa., for Allegheny County, Pennsylvania.

William F. Carroll, Asst. Atty. Gen., for the State of W. Va.

John R. Everitt, South Amboy, N. J., for the Borough of Sayreville, Middlesex County, N. J.

Gerald N. Jacobowitz, Walden, N. Y., for the villages of Walden, Montgomery, and Maybrook, Orange County, N. Y.

Howard A. Fortney, Treasurer, for Ashtabula County, Ohio.

Robert H. Glantz, Deputy City Sol., for the City of Providence, R. I.

Wolf, Block, Schorr & Solis-Cohen by Michael L. Temin, Philadelphia, Pa., and Proskauer, Rose, Goetz & Mendelsohn by George G. Gallantz, and David Goldblatt, New York City, for Grand Central Building, Inc.

Pepper, Hamilton & Scheetz by John G. Harkins, Jr., Philadelphia, Pa., for Manufacturers Hanover Trust Company.

Thomas C. Hanes, Pros. Atty., for Darke County, Ohio.

William F. Koney, Asst. Pros. Atty., for Wayne County, Mich.

William T. Lapcevic, New Canaan, Conn., for the Town of Greenwich, Conn.

Marion K. Finkelhor, Asst. City Sol., for the City of Pittsburgh.

Joseph Maisano, Asst. Corp. Counsel, for the City of Detroit.

Russell A. Malrick, Asst. Atty. Gen., for the State of Ohio.

Walter H. Mayo, III, Asst. Atty. Gen., Commonwealth of Massachusetts.

Moser, Roveto & McGough by George P. Moser, Union City, N. J., for the Township of Weehawken, N. J.

Ralph G. Murphy, Asst. Atty. Gen., for the State of Conn.

Abraham I. Okun, Asst. Corp. Counsel, for the City of Buffalo.

Dominick Olivito, Pros. Atty., for Jefferson County, Ohio.

William Portchmouth, for the village of Croton-on-Hudson, N. Y.

Louis J. Lefkowitz, Atty. Gen. by Julius L. Sackman, and Thomas P. Zolezzi, Asst. Attys. Gen., for the State of New York.

Fred V. Skok, Pros. Atty., and Daniel J. Supanick, Lake County Treasurer, for Lake County, Ohio.

Saul, Ewing, Remick & Saul by Robert W. Sayre, Philadelphia, Pa., for Uris 320 Park Corporation, Uris 245 Park Corporation, Union Carbide Corporation, Manhattan Savings Bank, Stahl Equities Corporation, and Fisher Park Lane Corporation.

Theodore L. Sendak, Atty. Gen., for the State of Ind.

Wilbur E. Simmons, Jr., Baltimore, Md., for the State of Md.

Edith I. Spivack, for J. Lee Rankin, Corp. Counsel, City of New York.

Joseph J. Talafous, Asst. Corp. Counsel, for the City of Jersey City, N. J.

Joseph L. Woytowitz, for the City of Baltimore.

Vincent X. Yakowicz, Deputy Atty. Gen., for the Commonwealth of Pa.

Robert A. Maloney, Asst. Atty. Gen., for the State of Ill.

Edward G. Plaszck, Asst. Pros. Atty., for Treasurer, Ashtabula County, Ohio.

Fox, Rothschild, O'Brien & Frankel by Victor Wright, Philadelphia, Pa., for Frank Licht, Governor of the State of Rhode Island, and Archie Smith, Public Utilities Administrator.

Sullivan & Worcester by Morris Raker, Boston, Mass., James Murray Howe, Boston, Mass., and Spencer Ervin, Jr., Philadelphia, Pa., for Richard Joyce Smith, Trustee of the New Haven Railroad.

Norman Cooper, Yonkers, N. Y., for the City of Yonkers, N. Y.

Henry Wixon, Asst. Corp. Counsel, for the District of Columbia.

Lee Davis, Asst. Atty. Gen., for the State of Va.

David A. Biederman, Deputy Atty. Gen., for the State of N. J.

## OPINION AND ORDER RE PETITION OF TRUSTEES TO DEFER PAYMENT OF TAXES

FULLAM, District Judge.

The Trustees of the Penn Central Transportation Company, in reorganization under section 77 of the Bankruptcy Act, have petitioned the Court for an order directing them to continue to defer payment of certain taxes.

When the debtor's petition for reorganization was approved for filing on June 21, 1970, the debtor was authorized, but not required, to pay taxes. The present petition seeks a directive that no taxes be paid until further order of court, with the limitation that the Trustees be authorized "to pay such taxes as they determine, in exercise of their business discretion, they should pay in the interests of ultimate reorganization." By virtue of this reservation, the Trustees propose to continue paying payroll and withholding taxes, and various other incidental or indirect taxes, the isolation of which for non-payment would be unreasonably inconvenient or costly.

The total liability of the debtor for the year 1970 for taxes of the kind covered by this petition was approximately $86,566,200, of which approximately $45,689,500 remain unpaid. These taxes are payable to some 2,600 collecting agencies, acting on behalf of many thousands of taxing entities.

Included in the above figures are the taxes on certain properties in the area of Grand Central Station in the city of New York, which are the subject of separate petitions filed in connection with these proceedings, documents Nos. 212, 274, 275, 277, 292, 310, 311, 312, and 389. These properties present special problems, including such matters as possible apportionment of the assessments between the underlying fee owned by the debtor, and the valuable improvements owned by leasehold interests; the extent to which the debtor acts merely as a conduit for the payment of taxes; and the consequences which would flow from non-payment. These matters are the subject of ongoing discussions between counsel for the interested parties. The taxes in this category, aggregating approximately $22,000,000 for the year, of which approximately $11,000,000 remain unpaid, will be dealt with in separate orders to be entered later.

Thus, the balance of unpaid taxes to be dealt with in this opinion amount to approximately $34,689,500 for the year 1970, and approximately $64,000,000 for each year thereafter.

The Trustees' petition is opposed by a substantial number of the taxing agencies involved. Some of the opponents contend that the Court cannot lawfully grant the relief prayed for, and all contend that the Court should not grant such relief.

A brief review of the legal principles governing the treatment of tax claims in bankruptcies and reorganizations will be helpful to an understanding of the problems involved in this case.

First, there are the distinctions between pre-bankruptcy tax claims and claims accruing during the reorganization. In ordinary bankruptcies and in Chapter X reorganizations, pre-petition taxes are priority claims in the fourth category under section 64(a), but may be entitled to treatment as secured claims, depending upon the existence of a perfected or perfectible lien under the applicable local statute. While not entirely clear, it is probable that the same is true in railroad reorganizations under section 77. This question was left unanswered in Arkansas Corporation Commission v. Thompson, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), but lower courts have held that the provi-

sions of section 64 relating to tax claims should be applied in railroad reorganizations. In the Matter of N.Y., Ontario & Western Ry. Co., 25 F.Supp. 709 (S.D. N.Y.1937), and the same view has been expressed in 5 Collier on Bankruptcy (14th Ed.) ¶ 77.21.

■ Taxes accruing during the reorganization proceeding are part of the cost of doing business, and, generally speaking, are entitled to the same priority as administrative expenses. Southern Railway Co. v. United States, 306 F.2d 119 (5th Cir. 1962); Lyford v. State of New York, 140 F.2d 840 (2d Cir. 1944); Northumberland County v. Reading Coal & Iron Co., 131 F.2d 562 (3rd Cir. 1942); In re Pressed Steel Car Co. of New Jersey, 100 F.2d 147 (3rd Cir. 1938); see 5 Collier on Bankruptcy, (14th Ed.) ¶ 77.07; 3A Collier, ¶ 62.14. But such taxes do not take precedence over other administrative expenses. Southern Railway Co. v. United States, supra. Indeed, it is frequently held that there can be no priority among debts in the same class. In the Matter of Columbia Ribbon Co., 117 F.2d 999 (3rd Cir. 1941). See 3A Collier on Bankruptcy, (14th Ed.) ¶ 64.02[4].

According to some authorities, trustees are under a duty to seek out and pay taxes accruing during the reorganization proceeding, as distinguished from pre-petition taxes. Ingels v. Boteler, 100 F.2d 915 (9th Cir. 1938), aff'd on other grounds 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939); In the Matter of Preble Corp., 15 F.Supp. 775 (D.Me.1936).

■ Depending upon the vagaries of local taxing statutes, the trustees may or may not be legally liable for post-petition taxes. Much of the confusion and conflict on this subject has been removed by statute. 28 U.S.C. § 960 provides:

"Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

Thus, such questions as whether a franchise tax is imposed on the right to exist, or the right to conduct a business, see Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136 (1932); or whether trustees conduct business as officers of the court, or as surrogates for the corporation's officers, see United States v. Whitridge, 231 U.S. 144, 34 S. Ct. 24, 58 L.Ed. 159 (1913), are no longer significant. Nevertheless, since Congress has no power to enact a state taxing measure, this statute does not eliminate the necessity of referring to the precise terms of the various taxing enactments to determine the applicability of the tax to trustees in bankruptcy. In view of the Congressional policy evidenced by 28 U.S. C. § 960, doubts are presumably to be resolved in favor of tax liability. See 3A Collier on Bankruptcy (14th Ed.) ¶ 62.14 [3]. Cf., Zimmer v. New York State Tax Commission, 126 F.2d 604 (2d Cir. 1942).

Additional distinctions between pre- and post-petition taxes arise in connection with the running of interest, and perhaps liability for penalties, for nonpayment, or for failure to file returns. See generally Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939); Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); In re Samuel Chapman, Inc., 394 F.2d 340 (2d Cir. 1968). It should be noted, however, that the Supreme Court in Gardner v. New Jersey, 329 U.S. 565, 580–581, 67 S.Ct. 467, 91 L.Ed. 504 (1947) left open many questions about the applicability to railroad reorganizations of ordinary bankruptcy rules regarding penalties and interest on tax claims.

■■ The 1966 amendments to the Bankruptcy Act have now made clear that there is considerable scope for reexamination of the amount and validity of tax claims, whether arising before or after the filing of the petition. 11 U.S.C. § 11(2A) confers upon the reorganization court jurisdiction to

"(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction * * *."

The applicability of this provision to railroad reorganizations cannot be doubted, in view of the express provisions of section 77(l) of the Act (11 U.S.C. § 205 (l)). With respect to pre-petition taxes, the statute thus makes it possible for the trustees to protect the rights of creditors from the consequences of possible derelictions on the part of the debtor in failing to contest illegal or excessive tax claims. Admittedly, however, this consideration is less likely to be significant in railroad reorganizations than in ordinary bankruptcies. With respect to post-petition taxes, the statute merely reaffirms the inherent power of the reorganization court to supervise administrative expenses. *See* generally, 3A Collier on Bankruptcy (14th Ed.) ¶ 64.07.

■■ And, quite apart from the issue of validity and amount, the reorganization court has considerable latitude in dealing with tax claims. They are within the expanded definition of "claims" set forth in section 77(b) of the Act (11 U.S.C. § 205(b)) and are within the reach of section 77(j) of the Act (11 U.S.C. § 205(j)), empowering the court to "enjoin or stay the commencement or continuation of suits against the debtor until after final decree; [and to] * * enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree * * *." As the Supreme Court stated in Gardner v. New Jersey, *supra*, at 577, 67 S.Ct. at 473:

"If the reorganization court lacked the power to deal with tax liens of a State, the assertion by a State of a lien would pull out chunks of an estate from the reorganization court and transfer a part of the struggle over the corpus into tax bureaus and other state tribunals. That would not only seriously impair the power of the court to administer the estate and adversely affect the power of the Interstate Commerce Commission and the court to promulgate a reorganization plan [citations omitted]. It would fly in the teeth of § 77, sub. a which grants the reorganization court 'Exclusive jurisdiction of the debtor and its property wherever located'. * * * It is the exclusive jurisdiction of the reorganization court which gives it power to preserve the railway as a unit and as a going concern and to prevent it from being divided up and dismembered piece-meal. Only in that way can continuous operation of the road be assured and a plan of reorganization be effected which not only safeguards the interests of the various claimants but is also compatible with the public interest. * * *"

Indeed, it can fairly be stated that deferral of taxes is the rule rather than the exception in railroad reorganizations. *See*, e. g., In re Long Island Railroad Co., 114 F.Supp. 363 (E.D.N.Y.1953); In the Matter of the New York, New Haven and Hartford Railroad Co., Debtor (D. Conn.Civil Action No. 30226), Order No. 54 entered January 5, 1962; Memorandum of decision in support of Order No. 25, filed October 20, 1961).

■ It is therefore quite clear that there is no merit whatever in the assertion that the Court is legally powerless to grant the prayer of the Trustees. The real issue here is whether, as a discretionary matter, the Court should require the payment of taxes, or direct that such taxes be deferred.

With respect to pre-petition taxes, the legal principles discussed above provide substantial justification for concluding that, for the protection of the Trustees, and other creditors and parties in interest, such claims should be subjected to the normal process of proofs, classification, and inclusion in the plan of reorganization. With respect to post-petition taxes, the possible legal obstacles to payment are of less significance, and cer-

tain very practical considerations are paramount.

On this record, it is not possible to state with certainty what portion of the $34,689,500 now outstanding represents pre-petition, and what portion represents post-petition, liability. In another phase of this reorganization proceeding, the Court has been advised that approximately $22,000,000 of this amount had been billed prior to the filing of the petition on June 21, 1970, but this would not necessarily be determinative. It seems probable that substantially all of the taxes presently outstanding are in the pre-petition category. It also seems probable, although not capable of determination on this record, that most of these taxes constitute liens of one kind or another.

But inasmuch as the Trustees' petition seeks deferral of future taxes as well, and since the practical considerations are paramount in any event, there is no present necessity for attempting a final categorization of these tax claims.

Broadly stated, the factors relevant to a ruling on this petition are as follows:

1. It is manifestly impossible for the debtor to pay any substantial part of its tax liabilities by December 31, 1970. Cash-flow projections, substantially unchallenged by anyone, disclose that the debtor will barely be able to meet current operating expenses during that period. By the end of the year, its cash on hand will be somewhat less than the amount which should be maintained as working cash, for feasible operations. These projections do not allow for the effects of the current nation-wide strike of the General Motors Corporation, which may well reduce revenues by more than $2,000,000 per month. Nor do these projections reflect such imponderables as the industry-wide collective-bargaining negotiations which have been in progress for several months.

2. The taxing agencies urgently require the payment of the debtor's taxes. In some instances, these taxes amount to a substantial percentage of the total governmental budget, which cannot now lawfully be recast in order to tap other possible sources of revenue to meet current needs.

3. It would be inequitable to require these taxing entities to underwrite the reorganization of the debtor, at the expense of the essential public interests they represent. However, these same municipalities do have a substantial stake in the continued operation of the railroad. Moreover, their revenues might very well be seriously and permanently impaired if the ultimate reorganization is not successful.

4. To defer payment of taxes for an extended period would merely add to the existing accumulation of indebtedness, and make the formulation of a successful plan of reorganization all the more difficult.

5. Just as the public interest in the continued operation of the railroad is, within the limitations imposed by the Constitution, paramount over private interests, so also, when it becomes necessary to choose between the two, the public interest in the continued operation of the railroad is paramount over the payment of taxes.

6. While all obligations in the category of costs of administration must be accorded equal weight in the final reorganization plan, in determining whether such costs should be paid on a current basis as the reorganization progresses, preference must be given to those payments which are essential to the continued operation of the railroad.

7. To the extent that it would not seriously jeopardize the continued operation of the railroad and the formulation of a successful plan of reorganization, every effort should be made to minimize actual hardship or loss which would be likely to cause serious disruption in the functioning of local government.

8. Ultimately, the success or failure of this reorganization will depend upon

whether the debtor's railroad operations can be made to generate sufficient net revenues to support the debt-structure which will eventuate. Considerable progress has already been made in reducing losses, but the Trustees and the new management obviously are entitled to more time to test the feasibility of eventual success in this effort. Additional time is also needed to formulate and carry out proposals for the orderly and advantageous disposal of non-essential assets.

 After carefully weighing all of the above considerations, I have concluded that, in general, the Trustees cannot and should not pay taxes at this time. However, I have also concluded that a further opportunity should be afforded local taxing agencies confronted with serious financial crises by reason of such deferral to bring the precise facts to the attention of the Trustees and the Court, so that the possibility of interim relief can be further explored. As set forth in the order now entered, this will be limited to situations in which the debtor's tax liability for the current year equals or exceeds 15% of the total annual budget of the municipality in question, and replacement of such revenues for the current year from other sources is impracticable.

## ORDER NO. 70

And now, this 26th day of October, 1970, it is ordered

1. Any taxing entity which claims (a) that the debtor's unpaid tax liability to such agency for the current year equals or exceeds 15% of the annual budget of such taxing entity for the current year; and (b) that under applicable law the budgeted revenue anticipated to be received from the debtor cannot lawfully be obtained from other sources; and (c) that deferral of payment of its said tax liability by the debtor could result in serious curtailment of essential services by such taxing entity, may present verified proof of these facts to the Trustees, not later than December 1, 1970. In all cases where such proof is presented, the Trustees are authorized to pay the taxes then due, and shall, not later than December 17, 1970, file in this Court a report setting forth what disposition has been made or is proposed to be made with respect to the tax claims in this category.

2. Except as provided in the preceding paragraph, and except for payroll taxes and withholding taxes, the Trustees are directed to make no further payment of taxes until further order of the Court; provided, however, that the Trustees in their discretion, and subject to such further orders as the Court may from time to time enter, are authorized to pay such taxes as the Trustees shall determine, in the exercise of their business discretion, they should pay in the interests of ultimate reorganization.

3. All persons holding any interest in any property owned, leased, or otherwise used by the debtor, or the earnings therefrom, notwithstanding the provisions of any lease or other agreement, are hereby enjoined, until further order of this Court, from exercising any right of default, termination, seizure of the property, or ejection of the debtor therefrom.

4. All persons and governmental entities are hereby enjoined from taking any action of seizure, foreclosure, tax sale, or any other action which would disturb the Trustees' continued use, occupancy, and possession of the properties owned or used by the debtor, or which would deprive the Trustees of title thereto.

5. Nothing contained in this order shall be deemed applicable to the petitions heretofore filed as documents Nos. 212, 274, 275, 277, 292, 310, 311, 312, and 389, or to any of the properties mentioned in said petitions, which properties have been referred to in these proceedings as the Grand Central Area properties in the city of New York, as to all of which the jurisdiction of this Court is retained and an order will hereafter be entered.