693 F.2d 4
 In re BOSTON AND MAINE CORPORATION, Debtor.
CITY OF CAMBRIDGE, Appellant,
v.
Robert W. MESERVE and Benjamin H. Lacy, Reorganization
Trustees of the Boston and Maine Corporation, Appellees.
 No. 82-1328.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 17, 1982.
Decided Nov. 9, 1982.
 
 Joseph F. Ryan, Boston, Mass., with whom Robert E. Brooks, Steven B. Levine, and Brown, Rudnick, Freed & Gesmer, Boston, Mass., were on brief, for appellant City of Cambridge.
 John A. Nadas, Boston, Mass., with whom Robert M. Gargill, and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellees Reorganization Trustees of the Boston and Maine Corp.
 Before DAVIS*, CAMPBELL and BREYER, Circuit Judges.
 DAVIS, Circuit Judge.
 
 
 1
 The City of Cambridge, Massachusetts (Cambridge or the City) appeals from a denial of its application for payment of taxes assessed on real estate located in Cambridge and owned by the Boston and Maine Corporation (B & M). The case arises in the railroad reorganization proceedings of B & M, which were initiated on March 12, 1970 with the filing of an involuntary petition against B & M under Section 77 of the Bankruptcy Act, 11 U.S.C. Sec. 205 (1977),[1] in the United States District Court for the District of Massachusetts (the reorganization court). That court approved the petition and appointed trustees on April 24, 1970. Since then the trustees have paid no taxes on real estate owned by B & M in Cambridge. The trustees were authorized to defer these tax payments (until further court order) by the reorganization court's Order No. 291 of September 19, 1978.
 
 
 2
 In July 1981 Cambridge filed its present application requesting an order to compel the trustees now to pay the back real estate taxes, plus interest, as well as the current taxes as they accrue.[2] Cambridge claimed both that B & M's financial condition had "improved dramatically" since the issuance of Order No. 291, and that the City had experienced increased financial hardship resulting from Proposition 2 1/2. (Proposition 2 1/2 restricts the amount of taxes a city or town in Massachusetts can levy on property to 2 1/2 percent of its "full and fair cash valuation"; this provision may be overridden by local voters. Mass.Gen.Laws ch. 59, Sec. 21C, inserted by St. 1980, ch. 580.)
 
 
 3
 The reorganization court denied Cambridge's application in a Memorandum and Order entered February 22, 1982, concluding that "the interests of the public [in the continued operation of the railroad and the pursuit of the proposed reorganization plan] outweigh the unparticularized hardship which may result to the inhabitants of Cambridge."
 
 
 4
 Local taxes, like those Cambridge imposes, are part of the cost of doing business of a railroad in reorganization (Central Vermont Railway v. Marsch, 59 F.2d 59, 61-62 (1st Cir.1932); Southern Railway v. United States, 306 F.2d 119, 126 (5th Cir.1962); In re Penn Central Transportation Co., 452 F.2d 1107, 1108 (3d Cir.1971), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972)), but the City does not dispute that in some circumstances a reorganization court is authorized to defer such tax payments. See In re Penn Central Transportation Co., 325 F.Supp. 294 (E.D.Pa.1970), aff'd, 452 F.2d 1107 (3d Cir.1971). Cambridge maintains that in this instance the court below applied an incorrect standard in assessing the evidence, and that by the proper gauge the court should have concluded that the trustees should pay all, or at least part, of the payments requested. Because we agree with the standard adopted by the reorganization court from the Third Circuit's opinion in Penn Central and find no abuse of discretion or clear error in the court's analysis here, we affirm that court's order.
 
 
 5
 In Penn Central, the Court of Appeals affirmed the District Court for the Eastern District of Pennsylvania in a railroad reorganization proceeding in which the latter court had granted a petition by the Penn Central trustees to defer payments of taxes. Based on the evidence presented by the trustees, the district court had found that it would be "manifestly impossible for [Penn Central] to pay any substantial part of its tax liabilities by December 31, 1970," 325 F.Supp. at 300. Cambridge now urges that to order a temporary deferral of tax payments, the court must find that the payment of local taxes would be "manifestly impossible" without defeating the reorganization, rather than that the "balance" of competing interests favored deferral.
 
 
 6
 That the district court in Penn Central stated as a matter of fact that the payment of taxes by Penn Central would be "manifestly impossible" does not mean that such a showing is required for deferral in every case. Indeed, the Third Circuit's summary of the district court's inquiry describes a balancing of interests similar to the reorganization court's analysis below:
 
 
 7
 After due inquiry, the district court concluded in effect that immediate payment of the property taxes in question would probably defeat the reorganization. It therefore decided that under the circumstances the only viable recourse was to postpone such payment for a reasonable time, taking into consideration the competing public interests inherent in reorganizing the railroad and in maintaining the revenues of the various taxing entities affected by the injunction.
 
 
 8
 Penn Central, 452 F.2d at 1108-09.
 
 
 9
 This "balancing" approach, heeding both the demands of the reorganization and those of the municipality, we likewise consider correct; Cambridge has given no persuasive argument for applying a higher or different measure. Like the Penn Central courts, the district court here took those factors into account--it weighed the effect that payment of all or part of the taxes would have on "the likelihood of reorganization of Debtor's railroad," against any hardship to Cambridge which might result (from continued deferral) in light of Proposition 2 1/2.
 
 
 10
 Furthermore, we cannot overturn the organization court's reasonable assessment of the evidence. On the B & M's present capacity to pay, the court found that (a) the cash on hand ($550,000-$750,000) was insufficient to make the payment requested by Cambridge; (b) contribution of the working capital of $3 million would also be insufficient; (c) depletion of cash on hand and working capital would have an important impact on the operation of the railroad and the preservation of the road as a going concern; (d) the same would be true even if some part of the restricted funds (earmarked for special purposes) be sought to provide sufficient funds to pay the taxes; (e) the 1981 operations resulted in a substantial loss and projection of an operating profit and positive cash flow for the period 1981-1985 "contribute nothing to the [now] available cash." At the same time the court pointed out that the Interstate Commerce Commission report on the reorganization plan was imminent,[3] and "there is no evidence to suggest that [B & M's] assets will be inadequate to meet Cambridge's priority claims of unpaid taxes accrued during reorganization, however termination of the section 77 proceedings is effected." In sum, the court's appraisal was, first, that the railroad could not pay the taxes at this time but could on the ending of the reorganization proceeding, and, second, that the order Cambridge seeks would seriously interfere with the evaluation and possible consummation of the reorganization plan. Those findings are all well supported.
 
 
 11
 We also reject Cambridge's assertion that the district court failed to consider the possibility of partial payment of the past liability, payment of current taxes as they accrue, or the use of restricted funds for payment of the debt. We are satisfied that these possibilities were given due consideration below, as evidenced by the portion of the opinion we have paraphrased supra, which expressly referred to the impropriety of requiring present payment of "only a part of the tax liability asserted."[4]
 
 
 12
 Of course, we do not know what the future may bring in the way of changed circumstances for either party. Our decision does not preclude Cambridge from bringing another application for payment of all or part of the real estate taxes in the event of either greater prosperity for the trustees and the railroad, or increased financial hardship to the City resulting from Proposition 2 1/2 or other factors.[5] In addition, the reorganization court should maintain an "awareness ... of its duty to reassess continually the progress of the reorganization in light of the financial circumstances of [Cambridge] ... and to terminate the injunction at the earliest feasible date." Penn Central, 452 F.2d at 1109. In the meantime, we affirm the decision of the district court that that time had not yet been reached.
 
 
 13
 Affirmed.
 
 
 
 *
 Of the Federal Circuit, sitting by designation
 
 
 [1]
 The Bankruptcy Act, as it existed prior to the Bankruptcy Reform Act of 1978, is applicable here because the proceedings involving B & M were begun prior to the passage of the Reform Act
 
 
 [2]
 Cambridge has asserted that at the time the application was filed B & M owed post-petition taxes amounting to $3,413,809.00 plus $1,871,266.00 in statutory interest, and pre-petition taxes of $439,185.10 plus $532,436.90 in interest. The reorganization court declined to rule for the present on the City's entitlement to interest on taxes and also denied without prejudice the trustees' request for a redetermination of the assessments giving rise to the tax claims. Those questions are not now before us
 
 
 [3]
 We were advised at argument that the reorganization plan has now been approved by the ICC and is before the reorganization court for its consideration
 
 
 [4]
 The expression "pay only a part of the tax liability" can appropriately be read to include partial payment of the past debt, as well as payment of current taxes as they accrue
 
 
 [5]
 Each party has made opposing contentions with regard to the propriety of our considering the effect of the override of Proposition 2 1/2 by the Cambridge voters. Because we agree with the reorganization court's analysis, which assumed that Cambridge is suffering under Proposition 2 1/2, we need not rule on these competing claims