BOWNES, Circuit Judge.
This is another, and perhaps the last, in a long line of decisions involving the reorganization of the Boston and Maine Railroad (B & M). Appellant, the City of Cambridge, appeals from an order of the district court sitting as a Reorganization Court. That order approved the final plan of reorganization for the B & M. Cambridge’s objections stem from the treatment afforded its claims for taxes under the plan. Some background is necessary.
On March 12, 1970, an involuntary petition for reorganization was filed against the B & M under section 77 of the Bankruptcy Act, 11 U.S.C. § 205 (1977). For some time before this date and throughout the reorganization period — March 12, 1970 through June 28, 1982 — B & M did not pay taxes owed to Cambridge on a current basis. B & M’s failure to pay the taxes due during the reorganization period was the result of an order of the district court on September 19, 1978, which authorized the Trustees “to defer the payment of taxes heretofore or hereafter assessed on or in connection with property of or in the possession of the Debt- or or the Trustees .... ”
Cambridge’s claims for taxes are substantial. It is owed approximately $434,000 in taxes accruing prior to the filing of the reorganization petition (prepetition taxes), *495 which includes prepetition interest, and approximately $4,026,000 in taxes accruing during the reorganization period (postpetition taxes). The reorganization plan provides for cash payment in full for these claims. It does not, however, provide for postpetition interest on the taxes owed. This interest amounts to approximately $375,000 on the prepetition taxes and approximately $1,868,000 on the postpetition taxes. It is the plan’s failure to provide for postpetition interest payments to which Cambridge objects.
In assessing the district court’s affirmance of the plan’s disallowance of interest it must be remembered that the district court, in passing on the allowance of claims, sits as a court of equity. Pepper v. Litton, 308 U.S. 295, 307, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939); see Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941). We have previously articulated the standard of review:
“It is not for us to pass upon the myriad factual and legal issues as though we were trying the cases de novo. ‘It is not enough to reverse the District Court that we might have appraised the facts somewhat differently. If there is warrant for the action of the District Court, our task for review is at an end.’ ” Group of Institutional Investors v. Chicago, M., St. P. & P.R. Co., 318 U.S. 523, 564 [63 S.Ct. 727, 749, 87 L.Ed. 959].
Boston and Maine Corp. v. First National Bank of Boston, 618 F.2d 137, 141 (1st Cir. 1980) (quoting New Haven Inclusion Cases, 399 U.S. 392, 435, 90 S.Ct. 2054, 2080-81, 26 L.Ed.2d 691 (1970)). The district court’s decision would, of course, not be warranted if it were the result of an error of law or based on factual findings that were clearly erroneous.
I. INTEREST ON PREPETITION TAXES
Cambridge, in its appeal, asserts that the district court erred in holding that its prepetition secured tax lien is not entitled to payment of postpetition interest from the assets of B & M. For the reasons set forth below, we agree with the district court.
It is a well-established principle that in bankruptcy and other insolvency proceedings interest upon claims ceases to accrue at the initiation of the proceedings. Nicholas v. United States, 384 U.S. 678, 682, 86 S.Ct. 1674, 1678, 16 L.Ed.2d 853 (1966); City of New York v. Saper, 336 U.S. 328, 332, 69 S.Ct. 554, 556, 93 L.Ed. 710 (1949); Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 162, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946); Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); Thomas v. Western Car Co., 149 U.S. 95, 116-17, 13 S.Ct. 824, 833, 37 L.Ed. 663 (1893); Debentureholders Protective Committee of Continental Investment Corp. v. Continental Investment Corp., 679 F.2d 264, 268-69 (1st Cir.), cert. denied, - U.S. -, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). As the Supreme Court has explained:
Exaction of interest, where the power of a debtor to pay even his contractual obligations is suspended by law, has been prohibited because it was considered in the nature of a penalty imposed because of delay in prompt payment — a delay necessitated by law if the courts are properly to preserve and protect the estate for the benefit of all interests involved.... “The delay in distribution is the act of the law; it is a necessary incident to the settlement of the estate.” Thomas v. Western Car Co., 149 U.S. 95, 116-117 [13 S.Ct. 824, 833, 37 L.Ed. 663]. Cf. American Iron Co., v. Seaboard Air Line, 233 U.S. 261 [34 S.Ct. 502, 58 L.Ed. 949]. Courts have felt that it would be inequitable for anyone to gain an advantage or suffer a loss because of such delay. Sexton v. Dreyfus, 219 U.S. 339, 346 [31 S.Ct. 256, 258, 55 L.Ed. 244]. Accrual of simple interest oh unsecured claims in bankruptcy was prohibited in order that the administrative inconvenience of continuous recomputation of interest causing recomputation of claims could be avoided. Moreover, different creditors whose claims bore diverse interest rates or were paid by the bankruptcy court on different *496 dates would suffer neither gain nor loss caused solely by delay.
Vanston Bondholders Protective Committee v. Green, 329 U.S. at 163-64, 67 S.Ct. at 240 (footnote omitted).
Historically governmental entities’ claims for past due taxes received special treatment, accruing postpetition interest until the date of payment. See City of New York v. Saper, 336 U.S. 328, 333, 69 S.Ct. 554, 557, 93 L.Ed. 710. In Saper, however, the Supreme Court held that the general prohibition against the payment of postpetition interest embraced tax liens in bankruptcy cases. Id. at 338, 69 S.Ct. at 559. Saper’s ban on postpetition interest for tax claims has been extended to Chapter X reorganizations, United States v. Edens, 189 F.2d 876, 877 (4th Cir.1951), aff’d per curiam, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682 (1952); Chapter XI arrangements, Massachusetts v. Thompson, 190 F.2d 10, 10-11 (1st Cir.1951), cert. denied, 342 U.S. 918, 72 S.Ct. 364, 96 L.Ed. 686 (1952); United States v. General Engineering and Manufacturing Co., 188 F.2d 80, 81-83 (8th Cir. 1951), aff’d per curiam, 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682 (1952); direct actions against a debtor after the confirmation of an arrangement, National Foundry Co. v. Director of Internal Revenue, 229 F.2d 149, 150-51 (2d Cir.1956); and Section 77 railroad reorganizations, In re Penn Central Transportation Co., 358 F.Supp. 154, 170 (E.D.Pa.1973); In re New York, New Haven and Hartford Railroad Co., 304 F.Supp. 1121, 1129-32 (D.Conn.1969).
Despite the general prohibition on the payment of postpetition interest, three exceptions have been developed by the federal courts. Interest may accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where securities, held by the creditor produce income after the filing of the petition; and (3) where the amount of the secured creditor’s security is sufficient to satisfy both the principal and interest due on the secured claim. In re Walsh Construction, Inc., 669 F.2d 1325, 1330 (9th Cir.1982); In re Kerber Packing Co., 276 F.2d 245, 246-47 (7th Cir.1960); United States v. Bass, 271 F.2d 129, 130 (9th Cir. 1959); In re Macomb Trailer Coach, Inc., 200 F.2d 611, 613 (6th Cir.1952), cert. denied, 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378 (1953); see also Debentureholders Protective Committee of Continental Investment Corp. v. Continental Investment Corp., 679 F.2d at 269 (discussing first exception); United States v. Kalishman, 346 F.2d 514, 517-18 (8th Cir.1965) (discussing first and second exceptions), cert. denied, 384 U.S. 1003, 86 S.Ct. 1913, 16 L.Ed.2d 1017 (1966); United States v. Harrington, 269 F.2d 719, 720 (4th Cir.1959) (same); Castanar v. Mora, 234 F.2d 710, 712 (1st Cir.1956) (discussing third exception); Kagan v. Industrial Washing Machine Corp., 182 F.2d 139, 146 (1st Cir.1950) (same); Oppenheimer v. Oldham, 178 F.2d 386, 388-89 (5th Cir. 1949) (same).
These exceptions are not rigid doctrinal categories. Rather, they are flexible guidelines which have been developed by the courts in the exercise of their equitable powers in insolvency proceedings. The reorganization court must consider whether to grant postpetition interest, not as an abstract matter, but in light of the nature of each claim and the equities of the case before it. In re Penn Central Transportation Co., 358 F.Supp. at 170; In re Leeds Homes, Inc., 222 F.Supp. 20, 33 (E.D.Tenn. 1963), aff’d 332 F.2d 648 (6th Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 71, 13 L.Ed.2d 43 (1964); see also In re Magnus Harmonica Corp., 262 F.2d 515, 518 (3d Cir.1959). At all times the reorganization court must be guided by the basic equitable principle announced in Vanston:
It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.
Vanston Bondholders Protective Committee v. Green, 329 U.S. at 165, 67 S.Ct. at 241 (citation omitted).
Cambridge contends that, having perfected its tax lien prior to the filing of the petition, it became a secured creditor in *497 the amount of its liened claims and enjoys the same status as all other secured creditors. As such a creditor, Cambridge alleges that it falls within the ambit of the third exception and is thus entitled to postpetition interest. We disagree.
Those cases in which courts have applied the third exception, permitting postpetition interest to accrue, have generally involved mortgages, trust deeds, pledges or conditional sales contracts. In all of these circumstances, the creditor’s security interest arises from a voluntarily executed agreement between the debtor and the creditor. The two parties have bargained with reference to a specific security with the expectation that the creditor may sell this security and realize the entire amount of the outstanding obligation, including interest accrued to the date of payment. In re Kerber Packing Co., 276 F.2d at 247; United States v. Harrington, 269 F.2d at 723-24. To deny such a creditor postpetition interest, when the amount of the security is sufficient to cover both the principal and interest due, would undermine the faith of lenders in the efficacy of credit arrangements. Such a loss of confidence could result in a curtailing of the free flow of capital in our economy. Note, The Federal Tax Lien in Bankruptcy: Enforceability of Liened Claims for Penalties and Post-Petition Interest, 44 Minn.L.Rev. 1149, 1156 (1960). Thus, granting postpetition interest to mortgages and other holders of contractual liens satisfies the expectations of the parties and strikes an equitable balance between the creditors and the debtors.
The Supreme Court has never ruled on the applicability of the third exception, granting postpetition interest when there is sufficient secured collateral, to tax liens. We agree with those federal courts of appeals which have held that the third exception does not embrace tax liens. In re Kerber Packing Co., 276 F.2d at 247-48; United States v. Mighell, 273 F.2d 682, 684 (10th Cir.1959); United States v. Bass, 271 F.2d at 131; United States v. Harrington, 269 F.2d at 723-24. A meaningful distinction can be drawn between contractual liens, such as a mortgage or deed of trust, and statutory liens, such as Cambridge’s perfected tax lien. A statutory lien depends for its existence solely on a legislative act creating the lien in specified circumstances. No bargaining takes place between the debtor-taxpayer and the taxing entity which is granted a lien; the lien cannot be classified as voluntary.[1]
Further, the payment of the interest, which is secured by the lien, is not contemplated by the parties at the beginning of each tax year. Rather, the imposition of interest on unpaid taxes is more in the nature of an enforcement device assuring the collection of delinquent taxes. In the context of an insolvency proceeding, to grant the taxing entity postpetition interest on its tax lien would impose the “enforcement device” not on the insolvent debtor, but on those lower priority creditors whose claims will go unpaid. Such creditors are but innocent bystanders; they could have done nothing to effect the prompt payment of taxes and avoid the imposition of post-petition interest. To penalize these creditors for the bankrupt’s inability to pay its taxes on time violates all notions of equity. In re Cameron, 166 F.Supp. 400, 407 (S.D. Cal.1958) (quoting In re Burch, 89 F.Supp. 249, 254 (D.Kan.1948)), aff’d sub nom. United States v. Bass, 271 F.2d 129 (9th Cir. 1959). As one federal court has explained:
The allowance of interest [on tax claims] to the date of payment, an accumulation caused solely because of delays necessitated by the successful efforts of the Trustee to protect and increase the estate, seems to me to be entirely inequitable, and to result in an unbalance of equities between the several creditors *498 rather than a “balance of equities” which the Supreme Court says is the touchstone of each decision..
In re Union Fabrics, Inc., 73 F.Supp. 685, 688 (S.D.N.Y.1947), aff’d sub nom., Carter v. United States, 168 F.2d 272 (2d Cir.1948), aff’d sub nom., City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949).
Cambridge points to only two cases in which postpetition interest has been granted to a governmental entity on its liened tax claims. In re Parchem, 166 F.Supp. 724, 730 (D.Minn.1958); In re Ross Nursing Home, 2 B.R. 496, 499-500 (Bkrtcy. E.D.N.Y.1980). We note that both cases were decided by inferior federal courts — a district court in Parchem, and a bankruptcy court in Ross Nursing Home. We feel that both cases were wrongly decided and choose to follow the better authority of the four circuit courts of appeals which have found the third exception inapplicable to liened tax claims.[2]
In light of Saper and the uniform rule in the Circuit Courts of Appeals, we think it appropriate to limit the granting of post-petition interest to those exceptional situations involving creditors deemed to have bargained for specific collateral to secure both the principal obligation and interest. Further, we perceive no need, on the facts of this case, to extend the third exception to cover Cambridge’s perfected tax liens. “Collection of the public revenue is a favored object, but we think today it is no more favored than that of protecting remaining creditors from the law’s delay to the extent of denying post-bankruptcy interest on tax claims, liened or not.” United States v. Bass, 271 F.2d at 132.
In light of the above discussion, we find that the district court acted well within its discretion in disallowing Cambridge’s claim for postpetition interest on its prepetition tax claims.
II. INTEREST ON POSTPETITION TAXES
During a period of reorganization a debtor is required to pay taxes on a current basis; they are an expense of administration. See In re Boston and Maine Corp., 693 F.2d 4, 5 (1st Cir.1982); Southern Railway Co. v. United States, 306 F.2d 119, 126 (5th Cir.1962). In a railroad reorganization, however, the district court is afforded a measure of discretion in determining when taxes are to be paid. See In re Boston and Maine Corp., 693 F.2d at 5; In re Penn Central Transportation Co., 452 F.2d 1107, 1108-09 (3d Cir.1971), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972). The court’s ability to defer taxes is a reflection of the special nature of a railroad reorganization. Of paramount concern is the public interest in continued operation of the railroad. In fact, liquidation is not available to a railroad. See Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. 648, 671-72, 55 S.Ct. 595, 604-05, 79 L.Ed. 1110 (1935). “A railroad debtor simply must continue to operate, without regard to the interests or desires of its creditors, at least until such time as the constitutional rights of secured creditors under the Brooks-Scanlon Co. v. Railroad Comm’n, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323 (1920) line of cases are clearly in jeopardy.” In re Penn Central Transportation Co., 458 F.Supp. 1234, 1277 (E.D.Pa.1978), aff’d, 596 F.2d 1102 (3d Cir.1979). In order to facilitate the continued operation of the railroad the district court has the authority to defer payment of taxes.
*499 In the instant case the district court deferred payment of all postpetition taxes pending reorganization. Under the proposed plan, Cambridge will recover the principal amount of these taxes, but not interest thereon. Cambridge mounts several challenges to the plan’s failure to award it postpetition interest, none of which we find persuasive.
Cambridge first asserts that Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853, makes mandatory the payment of interest on debts arising during the pendency of a reorganization. It claims that the district court erred as a matter of law in approving a plan that did not provide for interest to it. We need not determine whether Nicholas announced a rule of law or whether, as the Trustees argue, a bankruptcy court still retains a measure of discretion and may deny interest on administration claims when the “balance of equities” counsels against such payment. The holding of Nicholas is not applicable in this case.
Nicholas followed a line of cases in which the Supreme Court discussed the allowability of claims for interest accruing during a bankruptcy proceeding. As discussed above, Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244, established the general rule: interest on a debtor’s obligations is not computed beyond the date that a petition in bankruptcy is filed. Id. at 344, 31 S.Ct. at 257. Vanston followed thirty-five years later, reaffirming the holding of Sexton and reminding “that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.” Vanston, 329 U.S. at 165, 67 S.Ct. at 241. Then, in City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, the Court made clear that the general principle that interest stops accruing as of the date of filing of a petition in bankruptcy is applicable to tax claims. Id. at 330, 69 S.Ct. at 555.
Nicholas involved a claim for federal taxes incurred during a reorganization. The Court went a step further than the earlier cases by distinguishing among the various stages of a bankruptcy proceeding. The Court reaffirmed the justification for the general rule that interest stops as of the date of filing of a petition in bankruptcy.
. .. Sexton and Saper reflect the broad equitable principle that creditors should not be disadvantaged vis-a-vis one another by legal delays attributable solely to the time-consuming procedures inherent in the administration of the bankruptcy laws. In the context of interest-bearing debts, the equitable principle enunciated in Sexton and Saper rests at bottom on an awareness of the inequity that would result if, through the continuing accumulation of interest in the course of subsequent bankruptcy proceedings, obligations bearing relatively high rates of interest were permitted to absorb the assets of a bankrupt estate whose funds were already inadequate to pay the principal of the debts owed by the estate.
Nicholas, 384 U.S. at 683-84, 86 S.Ct. at 1679 (footnotes omitted).
The Court noted a fundamental difference between debts incurred before the filing of a petition and those incurred during the reorganization itself.
To be sure, the amount of interest that accumulates on a debt incurred during a Chapter XI arrangement depends upon the duration of a proceeding that takes place under the direction and authority of the bankruptcy court. But interest claimed on such a debt does not arise through a “delay” of the law in any meaningful sense. The underlying obligation of the debtor in possession is incurred as part of a judicial process of rehabilitation of the debtor that the procedures of Chapter XI are designed to facilitate.
Id. at 684-85, 86 S.Ct. at 1679-80 (citations omitted).
Thus, the Nicholas Court recognized that debts incurred during the reorganization itself are administration expenses that ought to be paid on a current basis and must bear interest if any creditor is to remain willing *500 to do business with a debtor in reorganization. See id. at 687, 86 S.Ct. at 1681. Failure to pay administration expenses during the reorganization period is the result of the debtor’s own choice and not, as is true of debts incurred prior to reorganization, mandated both by law and an order of the court supervising the reorganization. Thus, the accumulation of interest on administration expenses incurred during reorganization cannot be attributed to the law’s delay.
It is clear that the B & M’s failure to pay taxes during the reorganization period was the result of the district court’s order deferring payment. The railroad was unable to meet all of its current operating expenses, and this order was made to foster the purpose of the reorganization, ensuring the continued operation of the railroad in the public interest. The accumulation of interest was directly attributable to the law’s delay, and therefore, the reasoning of Nicholas is not applicable to the circumstances of this reorganization.
In an ordinary reorganization a debtor that is unable to meet current operating expenses will be forced into liquidation. See In re Penn Central Transportation Co., 458 F.Supp. at 1277. But since the court supervising a railroad reorganization is responsible for fostering the public interest in reviving an ailing railroad, it can delay payment of current taxes when such action is necessary to sustain the railroad’s continued operation. See Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294 U.S. at 676, 55 S.Ct. at 606 (“[A] proceeding under § 77 is not an ordinary proceeding in bankruptcy. It is a special proceeding which seeks only to bring about a reorganization, if a satisfactory plan to that end can be devised.”) In cases like Nicholas, no public interest is served in allowing a debtor to postpone payment of taxes. In the case of railroads, delay in payment reflects a public policy in favor of revival of the railroad. It would be unjust to allow interest to accumulate on court-postponed reorganization debts at the expense of other creditors.
We find support for our conclusion in In re New York, New Haven and Hartford Railroad Co., 304 F.Supp. 1121. In that case state and local taxing authorities sought interest on postpetition taxes, payment of which had been postponed by court order. Judge Anderson of the Second Circuit, sitting by designation, held that Nicholas did not compel allowance of interest.
[.Nicholas’] holding that taxes incurred during a Chapter XI proceeding itself will carry interest was based upon the fact that delay in payment was brought about as a result of the debtor’s own request that it be given a chance to rehabilitate itself and not because of the “law’s delay.” In the case of the New Haven there was never any thought of its rehabilitating itself because it was, at the time of the petition and had been for several years prior thereto, hopelessly insolvent. The sole purpose of pursuing a § 77 reorganization under the court’s order, was to seek a means of keeping the New Haven in operation in the public interest. The delay was imposed upon the debtor’s estate in this fashion and for this purpose. The ordered accumulation of accrued but unpaid taxes, as well as the interest on them, was not directed by the court as a matter of administrative convenience but as a matter of necessity. Nicholas gives recognition to and reaffirms the principle that the bankrupt estate should not be disadvantaged by means of the “law’s delay.”
Id. at 1134.
Cambridge seeks to distinguish the New Haven case on the grounds that the New Haven was hopelessly insolvent — “a total trainwreck” — whereas the B & M is in better financial shape. This is, to state a familiar adage, a distinction without a difference. The important factor for the court in New Haven was that the delay in payment of taxes was imposed by the court to foster the public interest in continued operation of the railroad. This is precisely the justification for the delay in the B & M’s payment of taxes.
*501 Cambridge further argues that the equitable justification for disallowing interest— prejudice to other creditors because of the law’s delay — is absent from this case. Cambridge claims that even if interest is paid in full on its tax claims, the B & M will still have sufficient cash to meet all of its obligations under the reorganization plan. The district court found that payment of interest to Cambridge would diminish the distributive shares of general unsecured creditors; this finding is not clearly erroneous.
Under the plan, general creditors’ claims are allowed at ten percent of their amount. But if there is no cash left after payment of higher priority claims, these creditors will receive Certificates of Contingent Interest (CCIs), which will expire in five years from the date of consummation. Cambridge conceded at oral argument that if B & M were presently to pay interest on the tax claims, general creditors will receive CCIs but no cash. The argument that general creditors will not be prejudiced since they will get all that they are entitled to under the plan is really one of semantics. True, the issuance of CCIs will, under the reorganization plan, satisfy in full the claims of the general creditors. It cannot be seriously contended, however, that general creditors will not be prejudiced if there is sufficient cash to pay their claims, but the cash is diverted to satisfy claims for interest on tax debts.
The parties’ dispute over the amount of cash available to pay off claims allowed under the plan revolves, for the most part, around the future profitability of investment of funds in the segregated account for settlement of claims. The district court suggested that if after all claims are settled there is sufficient cash to pay Cambridge’s claim for interest it might weigh the equities differently. The plan provides that the district court will retain jurisdiction during implementation of the plan. That court is the proper one in which to raise arguments about the B & M’s future ability to pay interest.
Cambridge raises three other objections to the plan, which we dispose of summarily. First, it claims that failure to award postpetition interest on postpetition taxes, an administrative expense, will subordinate its claim to those of other administrative creditors. The rule that all creditors within the same priority must be treated alike does not require that they all receive satisfaction of their claims at the same time. See In re Penn Central Transportation Co., 452 F.2d at 1108. Requiring simultaneous participation “would unduly impair the flexibility so essential to a reorganization proceeding.” Id. Furthermore, there is nothing in the record before us that indicates that all other administrative creditors have been paid in a timely manner, or that administrative debts that were postponed ultimately received interest.
Cambridge next asserts that the plan is unfair because it provides for interest payments to First Mortgages and Income Bondholders, whose claims are of a lower priority that the postpetition tax claims. This attack is based on two theories: first, that it violates the rule of Fosdick v. Schall, 99 U.S. 235, 25 L.Ed. 339 (1879), and second, that it violates the absolute priority rule. We see no merit to either theory.
Fosdick established the rule that administrative or current debts of a railroad must be settled before any other creditor is entitled to satisfaction of its claims. See id., 99 U.S. at 252. “Fosdick’s principle ... is one of mortgage law: that the mortgagee’s interest attaches to net income, which arises only after the payment from gross earnings for all necessary operating and managing expenses, proper equipment, and useful improvements .... ” In re Boston and Maine Corp., 634 F.2d 1359, 1368 (1st Cir.1980), cert. denied, 450 U.S. 982, 101 S.Ct. 1518, 67 L.Ed.2d 817 (1981); see also Southern Railway Co. v. United States, 306 F.2d at 126. The absolute priority rule establishes a similar proposition. Under that rule, a reorganization plan may not provide for the payment of lower priority claims before higher priority claims are fully satisfied. See Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 520-21, 527, 61 S.Ct. 675, 682-83, 685, 85 L.Ed. 982 (1941); Case v. Los Angeles Lumber Prod *502 ucts Co., 308 U.S. 106, 116, 60 S.Ct. 1, 7, 84 L.Ed. 110 (1939); Northern Pacific Railway Co. v. Boyd, 228 U.S. 482, 504, 33 S.Ct. 554, 560, 57 L.Ed. 931 (1913).
Cambridge contends that the plan’s awarding interest to lower priority claims of secured creditors while denying interest on its first priority administrative tax claims is an unlawful subordination of its claims. We disagree. Fosdick and the absolute priority rule say nothing about allowance of claims; they speak only to the order of payment to be accorded claims that the court allows under the plan. See New York v. Feinberg, 204 F.2d 502, 502-03 (2d Cir. 1953); In re New York, New Haven and Hartford Railroad Co., 4 B.R. 758, 799 (D.Conn.1980). Since we affirm the district court’s decision that Cambridge has no legal or equitable right to interest on its postpetition taxes, it has no allowable claim for interest that is even potentially in danger of subordination under the above principles.

The district court’s order approving the plan of reorganization is affirmed.

. Some courts have further distinguished statutory tax liens from contractual liens on the basis that tax liens are general, applying to all of the debtor’s property, whereas contractual liens are specific, attaching only to one asset. In re Kerber Packing Co., 276 F.2d at 247; United States v. Bass, 271 F.2d at 131-32. This reasoning is inapplicable here, since Cambridge’s lien attache's only to those parcels of real estate subject to Cambridge’s property taxes.

. Cambridge also maintains that its claim for postpetition interest falls within the second exception, which grants postpetition interest to a secured creditor who holds securities which themselves produce income after the filing of the petition. Cambridge claims that it is entitled to interest on those property taxes which are attributable to property rented by the B & M to a third party. The lease between the B & M and its tenant specifies that a portion of the rent is attributable to taxes. Despite this lease provision — which we view only as a collection mechanism — we find the second exception inapplicable. This exception arises only where securities, held by the creditor, produce income. Here, the B & M, and not Cambridge, holds the taxable property.