262 F.2d 515
 In the Matter of MAGNUS HARMONICA CORPORATION, Bankrupt,
Samuel S. Salitan, David Little, Philip Gustin, Irving
Jacobs, Leo B. Levin, Renee Kendell Dann, Jerome Kendell,
Allen Kendell, Edward Bottner and M. Fred Hirsch, Trading as
Credit Industrial Company, a Limited Partnership,
Appellants. In the Matter of MAGNUS HARMONICA
CORPORATION, Bankrupt, Andrew B. Crummy,
Trustee, Appellant.
 Nos. 12639, 12640.
 United States Court of Appeals Third Circuit.
 Argued Dec. 2, 1958.
Decided Jan. 8, 1959.
 
 Max L. Rosenstein, Newark, N.J., for Credit Industrial Co.
 Joseph F. Walsh, Newark, N.J., for trustee.
 Before GOODRICH, STALEY and HASTIE, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 These appeals are taken from the District Court for the District of New Jersey sitting in bankruptcy.[1] D.C.D.N.J.1958, 159 F.Supp. 778. The questions on appeal concern a secured creditor's right to interest under the terms of a factoring agreement for the period prior to the institution of a Chapter X proceeding and a claim for interest on the unpaid balance for the period following the institution of the Chapter X matter.[2] Both trustee and creditor have appealed.
 
 
 2
 I. Interest Prior to the Petition.
 
 
 3
 In 1953 Magnus Harmonica Corporation (Magnus) began borrowing from Credit Industrial Company (Credit) pursuant to a factoring agreement made between them. Under this agreement accounts receivable were assigned as security by Magnus to Credit. The interest term of the contract is the one about which the controversy is centered. It provided that Magnus would pay Credit under the following conditions. Interest was to be computed at the rate of 'one twentieth of one percent (1/20 of 1%) per day on the average daily cash balances outstanding throughout the month, plus three (3) days clearances. Monthly computations, such monthly statements rendered shall be deemed correct and to constitute accounts stated unless written notice to the contrary is received by us (Credit) within thirty days (30) after same have been rendered.'
 
 
 4
 Two items are in dispute. The first of these involves the computation of the amount to be charged for the three day clearance. Credit computed the amount of the interest due for the month at the contract rate and then added as the amount of the three day clearance another 10 percent of the monthly interest charge, figuring three days to be one-tenth of the month. The correct method of computing the clearance charge would have been to charge three days interest on the amount of the accounts receivable collected by Credit.[3] The difference between the method authorized by the contract and what was charged by the lender's plan is $3,746.08.
 
 
 5
 Much more important, however, is the handling of what is euphemistically called a 'service charge' payable by the borrower to the lender. The contract, as stated above, called for a monthly fee (for the use of money) to be paid by Magnus to Credit. Magnus paid this charge in cash for two months. But beginning June 30, 1953 to December 15, 1955, this was not paid by Magnus to Credit in cash. Instead, Credit entered the amount on its books each month and added this amount to the principal sum which it claimed from Magnus. From that time interest at the contract rate was charged to these additions to principal. The interest on these monthly service charges totals $26,046.22.[4] The trustee says this is an attempt to collect interest on interest and is unlawful. He seeks to have this amount and the overcharge on the three day clearance, in sum $29,792.30, preserved for the benefit of the estate. The judgment of the district court did not permit him to do so.
 
 
 6
 The arguments in these appeals have covered a wide range of territory and tend to make the problems seem more complicated than they are.
 
 
 7
 Both sides accept the proposition that the trustee in bankruptcy, for most purposes at any rate, takes over the bankrupt's situation as he finds it.[5] This rule is applicable here. The borrower, Magnus, was sent statements of account at regular intervals and the amount shown was figured as described above by the lender. But no protest was ever made, nor even a query or objection. The agreement between the parties, set out above, clearly provided for the acceptance of the statements rendered as correct unless the debtor raised some question within thirty days. We think this term of the contract bound the debtor and, therefore, bound the trustee.[6]
 
 
 8
 The fact that under New York law '* * * a promise to pay interest upon interest is void if made at a time before simple interest has accrued'[7] does not preclude Credit. The interest term of the contract does not violate the law of New York since there is no provision for the payment of 'interest on interest.' What the lender did essentially was erroneously to compute the amount of interest owing. Any overcharge could have been rectified under the terms of the agreement by prompt action on the part of the debtor. His failure to act within the time specified precluded any complaint about the amount of the interest charge. No. New York decision cited to us or independently uncovered extends the prohibition against 'interest on interest' to the situation here presented.[8]
 
 
 9
 The contract provision likewise governs the overcharge with respect to the three day clearance.
 
 
 10
 II. Post-Petition Interest.
 
 
 11
 We deal here only with interest following the institution of the reorganization proceedings. We are cited to the rule that interest is not recoverable after such a proceeding has begun[9] and to the exception that the rule does not apply when the creditor is secured above the amount of his principal debt.[10]
 
 
 12
 As to the 'interest on interest' claim, that part of it may be disposed of by saying that this is not interest provided for in the contract but is based upon Credit's own idea of handling the charges it made against its borrower. There is no contractual claim to it and the bankruptcy court judge was correct in denying it.
 
 
 13
 With regard to that part of the interest claim which is within the terms of the contract, we have a closer question. A bankruptcy court is one with equity powers and has a measure of discretion in their exercise. Vanston Bondholders Protective Committee v. Green, 1946, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162. In this particular case equitable considerations do not favor giving the claimed payment to this secured creditor. It made overcharges against the debtor outside the terms of the contract and it is only because the debtor is precluded from complaining that the trustee is bound by the debtor's inaction. Such equities as are apparent favor the trustee acting for the general creditors as against Credit. Both the referee and the district judge made an accurate application of equitable principles. Furthermore, this case is like Vanston Bondholders Protective Committee v. Green, supra, in that the collection of the amount due Credit was deferred by the advent of reorganization and bankruptcy proceedings. This case then fits Vanston Bondholders Protective Committee v. Green both on its facts and on its statement of equitable principles.
 
 
 14
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The debtor, Magnus Harmonica Corporation, filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. 501-676 (1946), on December 15, 1955. After extended proceedings, an order of the district court on June 25, 1956, adjudged the debtor bankrupt and directed that bankruptcy proceedings be undertaken. Other litigation growing out of this series of events is reported at 3 Cir., 1956, 233 F.2d 803, and 3 Cir., 1956, 237 F.2d 867
 
 
 [2]
 See note 1 supra
 
 
 [3]
 Until collection of the checks received by Credit as assignee of Magnus' accounts receivable, Magnus continued to be a debtor of Credit. The three day charge for clearance represents an agreed upon estimate of the average time that it would take for collection of the checks received by Credit. Credit's method of charging the three day clearance was based on the average amount of money owing in a particular month, a figure determined by the difference between the amount of money loaned and the amount collected
 
 
 [4]
 This sum has two components. $23,678.38 represents the daily interest rate on the unpaid interest. $2,367.83 represents a charge for three day clearance on the unpaid interest
 
 
 [5]
 Cohen v. Wasserman, 1 Cir., 1956, 238 F.2d 683, 688; Porter v. Searle, 10 Cir., 1955, 228 F.2d 748, 750
 
 
 [6]
 See Sea Modes, Inc., v. Cohen, 1955, 309 N.Y. 1, 127, N.E.2d 723; Rodkinson v. Haecker, 1928, 248 N.Y. 480, 162 N.E. 493
 
 
 [7]
 Newburger-Morris Co. v. Talcott, 1916, 219 N.Y. 505, 114 N.E. 846, 847, 3 A.L.R. 287; Young v. Hill, 1896, 67 N.Y. 162
 
 
 [8]
 If a choice of law question should be thought to be involved here, it is easily answered. Both the place of contracting and the place of performance were in New York and there was in the contract a term that New York law should govern. Under circumstances less compelling than this combination of factors, New Jersey would refer to New York law. Colozzi v. Bevko, Inc., 1955 17 N.J. 194, 110 A.2d 545, 548; Rhodes & Co. v. Chausovsky, 1948, 137 N.J.L. 459, 60 A.2d 623, 626; Naylor v. Conroy, 1957, 46 N.J.Super, 387, 134, A.2d 785, 787; Packard Englewood Motors, Inc., v. Packard Motor Car Co., 3 Cir., 1954, 215 F.2d 503, 507-508. Goodrich, Conflict of Laws 110 (3d ed. 1949)
 
 
 [9]
 Sexton v. Dreyfus, 1911, 219 U.S. 339, 344, 31 S.Ct. 256, 55 L.Ed. 244; Beecher v. Leavenworth State Bank, 9 Cir., 1951, 192 F.2d 10, 14
 
 
 [10]
 Jefferson Standard Life Ins. Co. v. United States, 9 Cir., 1957, 247 F.2d 777, 780; Palo Alto Mutual Savings and Loan Ass'n v. Williams, 9 Cir., 1957, 245 F.2d 77, 79; In re Macomb Trailer Coach, Inc., 6 Cir., 1953, 200 F.2d 611, 613