830 F.2d 758
 60 A.F.T.R.2d 87-5728, 56 USLW 2213, 87-2
USTC P 9659
 In the Matter of CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC
RAILROAD COMPANY, Debtor.
Appeal of UNITED STATES of America, Soo Line Railroad,
Intervening-Respondent.
 No. 85-2579.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 15, 1987.
Decided Sept. 28, 1987.
 
 Theresa E. McGlaughlin, U.S. Tax Div., Dept. of Justice, Washington, D.C., for intervening-respondent.
 Barry Sullivan, Jenner & Block, Chicago, Ill., for debtor.
 Before WOOD and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 The United States appeals from an order of the district court approving a plan of reorganization for a railroad. The government, as a creditor for railroad retirement taxes, contends that the plan of reorganization does not provide for an appropriate rate of interest to be paid on the taxes that have been due the government since 1977. The government takes the position that it is entitled to interest at the rates determined under the Internal Revenue Code, 26 U.S.C. Secs. 6621 & 6622 (Supp.1986), and not at the rate of 7.5/8.5 percent determined by the district court to be fair and equitable under the Bankruptcy Act, 11 U.S.C. Sec. 205(e) (1976) (repealed 1978). The government also contends that the plan does not provide for the payment of a tax penalty to which the government is entitled. The government asserts that, in view of the fact that the railroad proved ultimately to be solvent, the government is entitled to a penalty in excess of $120,000 for the railroad's failure to pay taxes for 1977.
 
 I. BACKGROUND
 
 2
 In late 1977 the insolvent Chicago, Milwaukee, St. Paul & Pacific Railroad Company ("Railroad") filed for reorganization under section 77 of the Bankruptcy Act, 11 U.S.C. Sec. 205 (1976) (repealed 1978).[1] The district court immediately entered an order that required the Railroad to continue rail operations to meet section 77's public interest goal of preserving existing rail service. To assist the Railroad in continuing rail service, the district court forbade the Railroad from paying debts the Railroad owed to any pre-petition creditors. This prohibition on paying debts included 1977 railroad retirement taxes due to the Internal Revenue Service ("government").
 
 
 3
 The Railroad's rail operations continued to produce massive deficits. In 1978, the first year after the reorganization petition was filed, the Railroad lost $82 million. In 1979 the Railroad lost an additional $118 million. To meet the Railroad's operating requirements, the Railroad's Trustee borrowed hundreds of millions of dollars and sold $220 million of the Railroad's property. Toward the end of 1979 the government filed a proof of claim of approximately $2.4 million for the unpaid 1977 railroad retirement taxes.
 
 
 4
 The Railroad continued to lose money and sought permission from the district court in 1980 to liquidate. The district court refused to grant permission to liquidate and required the Railroad to continue providing rail service. After several plans of reorganization had been submitted to the district court, as well as to the Interstate Commerce Commission, the district court approved the sale of the Railroad's core rail assets to the Soo Line Railroad Company for cash and for the assumption of the Railroad's rail liabilities.[2] This sale left the Railroad with assets of cash, securities, and some real estate with which it would operate as a reorganized business entity. At this point the Railroad was solvent with $390 million available to satisfy $169 million in claims. Shortly after this sale the Railroad's Trustee filed a 1985 Plan of Reorganization ("1985 Plan"). The 1985 Plan set out various classes of creditors which would receive differing payment priority. Class A creditors had superior status with claims for expenses of administration. Class B creditors were debenture holders. Class C creditors were the general unsecured creditors. The 1985 Plan characterized the government's tax claim as a Class C claim. The 1985 Plan provided that, like all other Class C creditors, the government would be entitled to receive full payment of its principal claim, plus post-petition interest at the Illinois statutory rate of 5 percent.
 
 
 5
 Several creditors objected to the 5 percent rate of post-petition interest proposed by the 1985 Plan, suggesting more appropriate rates ranging from 7.5 to 18 percent. The government in particular sought a higher interest rate, as defined in sections 6621 and 6622 of the Internal Revenue Code, which is tied to the prime rate. 26 U.S.C. Secs. 6621 & 6622 (Supp.1986). In addition the government for the first time sought pre-petition penalties from the Railroad for its failure to pay 1977 railroad retirement taxes. Negotiations ensued between the creditors and the Railroad and the Railroad's Trustee. The negotiations resulted in a compromise 7.5/8.5 percent rate of interest.[3] With the exception of the government, all of the other Class C creditors agreed to the compromise 7.5/8.5 percent rate of interest.
 
 
 6
 In July 1985 the district court approved the modified 1985 Plan. The government appeals the district court's order approving the modified 1985 Plan.
 
 II. DISCUSSION
 
 7
 In a railroad reorganization the district court sits as a court of equity in approving a plan of reorganization and ruling on the plan's treatment of creditors' claims. In re Boston & Maine Corp., 719 F.2d 493, 495 (1st Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 46 (1984). The district court can approve a plan of reorganization only if the plan is "fair and equitable" and provides for equal treatment among creditors. 11 U.S.C. Sec. 205(e) (1976) (repealed 1978). Review of the district court's determination that a particular reorganization plan is fair and equitable is governed by an "extremely limited standard of review." In re Chicago Pacific Corp., 773 F.2d 909, 916 (7th Cir.1985). That limited standard of review is similar to the abuse of discretion standard of review. As the Supreme Court has explained:
 
 
 8
 [W]e are not performing the functions of the District Court under Sec. 77(e). Our role on review is a limited one. It is not enough to reverse the District Court that we might have appraised the facts somewhat differently. If there is warrant for the action of the District Court, our task on review is at an end.
 
 
 9
 Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad, 318 U.S. 523, 564, 63 S.Ct. 727, 749, 87 L.Ed. 959 (1943).
 
 
 10
 The first issue the government raises is that it is entitled to a statutory rate of interest on its tax claim, as provided in the Internal Revenue Code, instead of the 7.5/8.5 percent rate set out in the plan of reorganization, as provided in the Bankruptcy Act.[4] Initially this seems to raise a direct conflict between two statutory schemes. One scheme, the Internal Revenue Code, calls for interest to be applied to delinquent taxes at a statutory rate closely tied to the prime rate. The other scheme, the Bankruptcy Act, calls for the district court to select an interest rate that is fair and equitable. If this was merely a question of which of two relevant statutory schemes was applicable, then the district court would have applied one instead of the other as a matter of law. We would have reviewed such a decision de novo. But this case did not arise in a vacuum. It is not primarily a tax case in which the Railroad is seeking to pay an equitable and fair rate of interest instead of the statutory rate. Rather, this case is a railroad reorganization. All railroad reorganizations are governed by the fair and equitable rate mandated by the Bankruptcy Act. Determining a fair and equitable rate of interest to be applied in a particular reorganization is left to the broad discretion of the reorganization court. We will affirm the rate of interest set by the reorganization court if we conclude that the court did not abuse its discretion in setting the rate.
 
 
 11
 The government concedes that the fair and equitable standard of the Bankruptcy Act governs the selection of an appropriate interest rate in this reorganization.[5] The government also recognizes that the district court's selection of a particular rate of interest is subject to the abuse of discretion standard of review. But the government argues that the only fair and equitable rate that can be applied to its tax claim is one that affords it full compensatory treatment. Because the Internal Revenue Code sets out specifically a statutory rate of interest, the government contends it is entitled to that rate to ensure that the government receives full compensation on its tax claim. The government argues that what is fair for all the other creditors in these circumstances is not fair for it, as the government is entitled to its claim in full. The government's position could also have some adverse impact on what has been found to be fair for all the other creditors. In short, the government argues along three lines that for its tax claim against the Railroad the fair and equitable rate of interest must equal the statutory rate set out in sections 6621 and 6622 of the Internal Revenue Code. We disagree.
 
 
 12
 The government's first line of argument is that the statutory rate of interest set out in sections 6621 and 6622 should apply in this case even though it is a reorganization proceeding. To bolster this argument the government cites the Supreme Court case of United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299 (1924) and several supporting cases from the courts of appeals.[6] The government argues that these cases stand for the proposition "that when interest is to be granted with respect to a tax claim, the relevant statutory provision should be employed in calculating the amount of interest due." In other words, the fair and equitable rate with respect to tax claims can only be, and must be, that rate set out in the applicable statutory taxing scheme.
 
 
 13
 We are unconvinced, however, that Childs and its progeny mandate that a reorganization court apply the statutory rate of interest as the only fair and equitable rate in a reorganization proceeding with respect to tax claims. Childs and the other cases held that interest could be assessed in the court's discretion at a statutory rate, but only if the statutory rate was not punitive. They did not hold, however, that the statutory rate must be applied. Indeed, in a subsequent Supreme Court case, City of New York v. Saper, 336 U.S. 328, 335 & n. 14, 69 S.Ct. 554, 558 & n. 14, 93 L.Ed. 710 (1949), the Court, in concluding that Childs and the other cases dealt solely with the question of whether the interest rate applied was punitive or not, said: "We cannot agree that [Childs ] represents even a sub-silentio approval of allowance of post-bankruptcy interest." Saper, 336 U.S. at 336, 69 S.Ct. at 558.
 
 
 14
 Moreover, at the time Childs was decided in 1924, and in the 1930s when the other appellate cases were decided, the government's tax claims had absolute priority over other claims. The government's unique status allowed it to receive interest on its tax claims before other claimants even received principal. But that unique status had vanished by the time Saper was decided in 1949. The Chandler Act of 1938, 52 Stat. 840 (1938), "assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest." Saper, 336 U.S. at 337, 69 S.Ct. at 559. Thus, Childs and the other cases decided only that a non-punitive statutory rate of interest could be applied, but did not mandate that result, under a statutory scheme that was altered in 1938. Consequently, we do not feel bound to say that those cases require the reorganization court to apply the statutory rate, even if we were to conclude that the rate set out in sections 6621 and 6622 is non-punitive.
 
 
 15
 The government's second line of argument is that because tax claims generally receive priority, the government's claim for a statutory rate of interest should also receive priority. Citing 5 Collier on Bankruptcy p 77.21 at 608, 620-21 (14th ed. 1978), the government argues that "taxes are entitled to priority of payment." Then, without citing any additional authority, the government contends: "In light of that priority, federal tax claims also may be singled out for purposes of determining the proper rate of interest payable in Section 77 proceedings where the debtor ultimately proves to be solvent." Apparently the government believes that because tax claims may be entitled to priority, interest on those claims is also entitled to some special status. And if we agreed with the government's contention, it would mean that the government's tax claims could receive interest at the higher statutory rate, rather than the 7.5/8.5 rate established in the modified 1985 Plan, because the interest rate for the government's tax claim would be entitled to special status.
 
 
 16
 We find no support for the government's priority-of-payment contention. Priority in order of payment has nothing to do with the amount of interest awarded in this case. The government was classified as a Class C general unsecured creditor. It will not be paid before or after any other Class C creditor. Neither will it be paid before any senior creditors or after any junior creditors. Instead, the government will be paid on its claim in the appropriate order of priority. Thus, the government's argument is not really for priority of payment. Rather, it is for special treatment apart from the other creditors in its class with respect to the interest rate applicable to its tax claim.
 
 
 17
 We have noted previously, however, that "[a] principal goal of the preference provisions is the assurance of equal distribution among creditors." Barash v. Public Finance Corp., 658 F.2d 504, 508 (7th Cir.1981). The Supreme Court has explained:
 
 
 18
 [T]he theme of the Bankruptcy Act is equality of distribution. To bring himself outside of that rule an unsecured creditor carries a burden of showing by clear and convincing evidence that its application to his case so as to deny him priority would work an injustice.
 
 
 19
 Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941) (citations omitted). This equal treatment rule demands that "if one claimant is to be preferred over others, the purpose should be clear from the statute." Nathanson v. NLRB, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). We do not find any support for the government's claim that it should be favored over the other Class C creditors for the rate of interest payable on its claims. Section 77 of the Bankruptcy Act deals with creditors as classes; nothing in section 77 indicates that preferences will be granted to some, but not other creditors within the same class. See 11 U.S.C. Sec. 205(e) (1976) (repealed 1978). Consequently, the government's claim for a higher rate of interest cannot succeed. See Boston & Maine Corp. v. Chicago Pacific Corp., 785 F.2d 562, 566 (7th Cir.1986) ("The bankruptcy law treats all pre-bankruptcy claims of the same class equally. When one claimant gets treatment that is denied to others, they have been treated inequitably."); In re Penn Central Transportation Co., 325 F.Supp. 294, 298 (E.D.Pa.1970) ("[I]t is frequently held that there can be no priority among debts in the same class."), aff'd, 452 F.2d 1107 (3d Cir.1971), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).
 
 
 20
 The government's final line of argument is that when a debtor proves ultimately to be solvent, in contrast to the usual case in which the debtor is insolvent, the government should receive the statutory rate of interest to which it is entitled and not any other rate. Because the Railroad has ample funds to pay all of its claims, the government argues, the only fair and equitable rate of interest on its tax claim is the one that provides full compensation. To support this argument the Railroad relies heavily on language we used in deciding an earlier appeal in this reorganization involving claims of the Class B debenture holders. In re Chicago, Milwaukee, St. Paul & Pacific Railroad, 791 F.2d 524 (7th Cir.1986) ("Debenture Holders "). In Debenture Holders we ruminated:
 
 
 21
 The only good reason for refusing to give a creditor in a reorganization all that he bargained for when he extended credit is to help other creditors, the debtor's assets being insufficient to pay all creditors in full. All of the Milwaukee Road's creditors will be paid in full, even if the debenture holders are paid out at the highest valuation of their claim. The only competing equities are those of CMC's shareholders, and are weak, quite apart from the fact that many or for that matter all of them may have bought their shares after the Milwaukee Road went into bankruptcy and may therefore have lost nothing because of the bankruptcy....
 
 
 22
 ....
 
 
 23
 The function of equitable considerations in a bankruptcy proceeding is to guide the division of a pie that is too small to allow each creditor to get the slice for which originally contracted. Hence if the bankrupt is solvent the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights....
 
 
 24
 Id. at 527, 528.[7] If the Railroad had proved to be insolvent, the government would not be entitled to any interest on its tax claim. But the Railroad is solvent, so the government is entitled to some interest. The Railroad's solvency, however, does not guarantee the government the right to a statutory rate of interest. The fact that the Railroad proved ultimately to be solvent is not dispositive of whether the government should receive a statutory rate of interest on its tax claim. It is only a prerequisite to the award of any interest at all. A successful reorganization does not mean all creditors are therefore to be paid in full.
 
 
 25
 The language we used in Debenture Holders was limited to the situation we were then considering--the obligations due to the Class B debenture holders of the Railroad. Those debenture holders had executed written debenture agreements with the Railroad. The Railroad and the debenture holders had agreed to a stated rate of interest to be paid on the debentures, which was lower than the rate of interest paid to other creditors. The rate of interest was consensual and contractual. Moreover, the interest at issue there was an inherent part of the debenture agreements themselves and did not arise solely from a delay in the payment of principal. By contrast the statutory rate of interest sought by the government in this case is involuntarily imposed. The Railroad did not agree, by contract or otherwise, to pay the statutory rate of interest. In a reorganization proceeding, contractual rates of interest are not analogous to statutory rates. As the First Circuit explained in a railroad reorganization case:
 
 
 26
 A meaningful distinction can be drawn between contractual liens, such as a mortgage or deed of trust, and statutory liens, such as [a] perfected tax lien. A statutory lien depends for its existence solely on a legislative act creating the lien in specified circumstances. No bargaining takes place between the debtor-taxpayer and the taxing entity which is granted a lien; the lien cannot be classified as voluntary.
 
 
 27
 In re Boston & Maine Corp., 719 F.2d 493, 497 (1st Cir.1983), cert. denied, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984).
 
 
 28
 The Railroad and the government did not agree in advance on a stated rate of interest. The rate of interest, therefore, is one determined by the reorganization court to be fair and equitable and not the statutory rate to which the Railroad did not consent.
 
 
 29
 None of the government's three arguments justifies the mandatory application of the statutory rate of interest found in sections 6621 and 6622 of the Internal Revenue Code. The reorganization court was not required to award interest to the government at that rate and at no other. Rather, the reorganization court had broad discretion to formulate a rate of interest that was fair and equitable to all the creditors in Class C. As the Supreme Court explained some time ago:
 
 
 30
 It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor.
 
 
 31
 Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946).
 
 
 32
 The reorganization court was entitled to weigh and balance the equities in this case. On one side of the balance there were considerations favoring the government. The Railroad was solvent. It could afford to pay the claims of its creditors. In fact, the Railroad was sufficiently solvent that interest could be awarded on the creditors' claims. Typically, interest paid on outstanding tax claims is governed by sections 6621 and 6622 of the Internal Revenue Code. On the other side of the balance, however, there were competing considerations. The Railroad was forbidden by the reorganization court from paying the claim of any creditor, including the government. The Railroad's estate was eroded by hundreds of millions of dollars when the Railroad continued to provide rail service and when the reorganization court refused to allow the Railroad's core assets to be sold at a price $210 million greater than that paid by the Soo Line Railroad. All the creditors of Class C, except for the government, agreed to accept the 7.5/8.5 rate of interest on their claims even though they endeavored to receive interest at rates ranging from 5 to 18 percent.
 
 
 33
 After evaluating all of these considerations, against a backdrop of seven years of experience in this reorganization, the reorganization court concluded:
 
 
 34
 In light of the claims asserted, the prevailing interest rates, the losses suffered by the Estate during the reorganization, the varying statutory rates that apply in states of residence of claimants, and the decision of the Rock Island reorganization court with respect to interest rates, the rates and method of calculation provided in the proposed modifications are fair and equitable to all creditors in Classes A and C.
 
 
 35
 The reorganization court had broad discretion to evaluate all the considerations in arriving at a fair and equitable rate of interest. We have already concluded that the reorganization court was not required to award interest to the government at the statutory rate. Rather, the court was free to evaluate and balance many considerations in arriving at a fair and equitable rate of interest. Consequently, we hold that the reorganization court appropriately balanced all the factors to arrive at a fair and equitable rate of interest and did not abuse its discretion in so doing.
 
 
 36
 In addition to seeking a statutory rate of interest on its tax claim, however, the government also seeks to recover a tax penalty on the Railroad's unpaid 1977 taxes. The Railroad's initial response to this attempt to obtain a tax penalty is that the government did not include a claim for a tax penalty in its original claim and did not amend its original claim to include the additional claim for a penalty. The Railroad points to the Bankruptcy Act's requirement that all creditors file claims prior to participating in a reorganization. Section 57(n) of the Bankruptcy Act specifically mandates that the government adhere to this requirement of filing claims:
 
 
 37
 [A]ll claims provable under this title, including all claims of the United States ... shall be proved and filed in the manner provided in this section. Claims which are not filed ... shall not be allowed....
 
 
 38
 11 U.S.C. Sec. 93(n) (1976) (repealed 1978). That mandate is straightforward. Claims not filed are not allowed.[8]
 
 
 39
 The government concedes that it did not file a claim for a tax penalty. The government attempts to justify its failure to file a claim at the appropriate time by arguing that "it was not known at the time the proofs of claim were due to be filed that the debtor would prove to be solvent." To add additional weight to that justification the government argues that it "had taken the published position in accordance with the weight of authority that it would not claim penalties in bankruptcy proceedings unless the estate proves to be solvent." Citing to Rev.Rul. 68-574, 1968-2 C.B. 595. But uncertainty as to fluctuations or changes in the value of a debtor's estate does not excuse a failure to file a timely claim. Particularly in a railroad reorganization, where a high likelihood exists that portions of the railroad's estate will be sold or otherwise exchanged, the creditors are aware that the value of the estate is subject to change. In this case, for example, bids made for the Railroad's core rail assets differed by $210 million. The government should not have assumed that the value of the estate would remain constant.[9]
 
 
 40
 The government's reliance on one of its own revenue rulings to justify its failure to file a claim does not help the government's position. The fact that the government publicly stated it would not file claims for penalties when the debtor is insolvent may have put some debtors and other creditors on notice that if the debtor ultimately became solvent the government would seek a tax penalty. But that constructive notice did nothing to assist the reorganization court in evaluating the potential tax penalty claim with all the other properly filed claims that were before the court for its consideration. A tax penalty claim, like any other claim, must be properly presented to be considered by the reorganization court. "[A] bankruptcy court cannot adjudicate the merits of any claim, including a Federal tax claim, which has not been asserted in the bankruptcy proceeding by the filing of a proof of claim." S.Rep. No. 999, 89th Cong., 2d Sess. 11, U.S.Code Cong. & Admin.News 1966, pp. 2442, 2452 (1966) (Report of Senate Finance Committee on "Status of Taxes and Tax Liens in Bankruptcy Proceedings").
 
 
 41
 The government urges us to overlook its failure to file a claim because reorganization courts sit as courts of equity and consequently some reorganization courts have carved exceptions out of the general rule requiring timely filing of a proof of claim. The government cites as authority, however, two older cases in which amendments to claims were actually filed by the creditor. See Menick v. Hoffman, 205 F.2d 365, 366 (9th Cir.1953); Scottsville Nat. Bank v. Gilmer, 37 F.2d 227, 228-30 (4th Cir.1930). The government in this case never filed a claim, or even attempted to amend its original claim, for a tax penalty. Although a reorganization court is indeed a court of equity, and as such it may well allow an untimely claim or an amendment to a claim for equitable reasons, it is yet constrained by the dictates of the Bankruptcy Act. The Bankruptcy Act clearly commands that "[c]laims which are not filed [whether timely or otherwise] ... shall not be allowed." 11 U.S.C. Sec. 93(n) (1976) (repealed 1978).
 
 
 42
 The government's final argument in this regard is that a different provision of the Bankruptcy Act allows the government to file an untimely claim because the Railroad proved ultimately to be solvent. Section 57(n) of the Bankruptcy Act states:When in any case all claims which have been duly allowed have been paid in full, claims not filed within the time hereinabove prescribed may nevertheless be filed within such time as the court may fix or for cause shown extend and, if duly proved, shall be allowed against any surplus remaining in such case.
 
 
 43
 11 U.S.C. Sec. 93(n) (1976) (repealed 1978). It appears that after the original claims were filed in this case the creditors became aware that the Railroad would become solvent when its core rail assets were sold. The Railroad's Trustee then filed his proposed 1985 Plan, which of course did not include any provision for the payment of a tax penalty to the government because the government had not filed a claim for the tax penalty. The government filed a response to the Railroad's Trustee's proposed 1985 Plan in which the government stated for the first time: "The I.R.S. tax penalties must also be paid." In a one-sentence footnote to that sentence, on page eleven of a fifteen-page document, the government admitted: "The Government's claim against the Debtor includes a pre-petition failure to deposit penalty of $121,664.42, which was not set forth in its proof of claim." Aside from discussing the merits of its claim for a tax penalty in one and one-fourth pages, that was all the government said with respect to filing a tax penalty claim. The government did not file a new claim. Neither did it file an amendment to its original claim. Instead, it dropped a footnote to a single sentence, in one of many documents filed, as one of many creditors, one month before the proposed 1985 Plan was approved as modified, in a reorganization case that had been in the court for seven and one-half years. We do not believe that simple footnote was sufficient to qualify as the filing of a formal proof of claim.
 
 
 44
 Moreover, the language from the Bankruptcy Act on which the government relies is not helpful to the government's contentions. Section 57(n) allows untimely claims to be filed "within such time as the court may fix or for cause shown extend." 11 U.S.C. Sec. 93(n) (1976) (repealed 1978). The government does not contend, and we can find nothing in the record that shows, that the reorganization court either "fix[ed]" an amount of time or "for cause shown extend[ed]" the time in which the government could file a late claim for its tax penalty. Therefore, we cannot say that the government's footnote, even if it had qualified as the filing of a claim, was filed within some amount of time fixed or extended by the reorganization court.
 
 
 45
 This serves as a good example of why a formal proof of claim should be filed. Although the government did include its footnote stating the claim and the Railroad, in a one-sentence paragraph on page six of a twenty-page document, raised the objection of untimeliness as to the government's attempt at filing of a proof of claim (as part of a one and one-third page discussion of the merits of the claim), the reorganization court did not address the timeliness issue in its order approving the modified 1985 Plan. In part of one sentence on page thirteen of an eighteen-page order the reorganization court held:
 
 
 46
 With respect to the claims of the United States and the Iowa Counties for interest and penalties on their claims for taxes at rates higher than the interest rates provided for other claims in Classes A and C, the Court finds that penalties are not properly assessable for delay of tax payments occasioned by the reorganization....
 
 
 47
 It does not appear that the tax penalty claim was argued by the parties or considered by the reorganization court with any degree of thoroughness. The question of the timely filing of a formal proof of claim, moreover, was not even mentioned in the order. Both parties' briefs in response to the proposed 1985 Plan and the court's approval of the modified 1985 Plan were filed in a one month's period of time. That type of hasty consideration of a claim potentially could have been avoided with the filing of a formal proof of claim, which would clearly have brought the matter to the attention of the parties and the court. In sum, we hold that the government did not file a timely proof of claim as required by the Bankruptcy Act.III. CONCLUSION
 
 
 48
 The government is entitled to interest on its tax claim at the rate established in the modified 1985 Plan approved by the reorganization court. The court did not abuse its discretion in approving that rate instead of applying the rate set out in sections 1621 and 1622 of the Internal Revenue Code. The government is not entitled to a tax penalty because it did not file timely proof of claim for that tax penalty.
 
 
 49
 In these respects the order of the reorganization court approving the modified 1985 Plan is
 
 
 50
 AFFIRMED.
 
 
 
 [1]
 Because the Railroad filed for reorganization before October 1, 1979, the applicable statutory scheme that controls these reorganization proceedings is the old Bankruptcy Act instead of the new Bankruptcy Code. Central Trust Co. v. Official Creditors' Committee of Geiger Enterprises, Inc., 454 U.S. 354, 355-59, 102 S.Ct. 695, 695-97, 70 L.Ed.2d 542 (1982); In re Chicago, M., St. P. & P. R.R., 791 F.2d 524, 525-26 (7th Cir.1986)
 
 
 [2]
 The Soo Line Railroad Company had not submitted the highest bid for the Railroad's rail assets. The Chicago & Northwestern Transportation Company had bid $210 million more for the Railroad's rail assets than the Soo Line Railroad had bid. But the Soo Line Railroad's bid was accepted because the district court found that it better served the public interest. See In re Chicago, M., St. P. & P. R.R., 799 F.2d 317, 320-21 (7th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987)
 
 
 [3]
 The compromise rate of interest provided in the modified 1985 Plan is as follows:
 Interest with respect to Class A and Class C Claims will be calculated ... at the rate of seven and one-half percent (7 1/2%) per annum, without compounding, from the date of liquidation to February 19, 1985. From February 20, 1985 to the Distribution Date (in the case of Claims finally allowed, settled or adjudicated prior to the applicable Distribution Date), or to the date of payment (in the case of other Claims) interest will be calculated at the rate of interest currently being earned on the funds of the Estate held in escrow accounts in the name of the Trustee, the Debtor or claimants entitled to interest may make application to have this rate altered prospectively for periods beginning after September 1, 1985 in the event the interest then being earned on funds of the Estate should warrant a change.
 
 
 [4]
 Typically, unsecured general creditors do not receive post-petition interest on their claims. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163-64, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946). This result does not apply, however, in those instances in which the debtor proves ultimately to be solvent. Id.; Ruskin v. Griffiths, 269 F.2d 827, 830-31 (2d Cir.1959), cert. denied, 361 U.S. 947, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960). When a debtor does prove to be solvent, creditors may receive post-petition interest
 
 
 [5]
 Although the government concedes that the fair and equitable standard applies in this case, we have noted previously that "where there is a conflict between the order of priorities set out in the Bankruptcy Act and preferences given to the Government by nonbankruptcy legislation, the bankruptcy priorities should control." In re Halo Metal Prods., Inc., 419 F.2d 1068, 1072 (7th Cir.1969), aff'd sub nom. United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971)
 
 
 [6]
 E.g., In re Martin, 75 F.2d 618, 621 (7th Cir.1935); In re Beardsley & Wolcott Mfg. Co., 82 F.2d 239, 240-41 (2d Cir.1936); In re Semon, 80 F.2d 81, 81-82 (2d Cir.1935); Horn v. Boone County, 44 F.2d 920, 921-22 (8th Cir.1930)
 
 
 [7]
 The government also points to similar language in a 1951 district court decision:
 In this connection, it is important that IHES is not at the present time insolvent. It has assets more than sufficient to meet all claims of its creditors. No benefit will be given to the debenture holders at the expense of any other class of creditors. The burden of this payment will fall entirely on the interest of the stockholders. They cannot complain that they are treated inequitably when their interest is cut down by the payment of a sum to which the debenture holders are clearly entitled by the express provisions of the trust indenture.
 In re International Hydro-Electric Sys., 101 F.Supp. 222, 224 (D.Mass.1951).
 
 
 [8]
 See, e.g., In re Chicago Pacific Corp., 773 F.2d 909, 917 (7th Cir.1985) (holding claim filed after approval of a plan in section 77 reorganization was barred); In re Connecticut Motor Lines, Inc., 336 F.2d 96, 107 (3d Cir.1964) (denying IRS recovery of tax collections because IRS failed to file claim); Perry v. Certificate Holders of Thrift Sav., 320 F.2d 584, 589-90 (9th Cir.1963) (holding that notwithstanding a powerful equitable claim creditors must file claim to participate); In re L. Wenar Millinery Co., 1 F.2d 385, 388 (N.D.Tex.1923) (holding filing requirement is absolute), aff'd, 4 F.2d 77 (5th Cir.1925)
 
 
 [9]
 Although we do not decide whether or not the tax penalty could be characterized as an unliquidated or contingent claim under section 57(d) of the Bankruptcy Act, 11 U.S.C. Sec. 93(d) (1976) (repealed 1978), we do note that bankruptcy courts will not consider contingent claims that have not been properly presented by filing a proof of claim. See, e.g., In re THC Fin. Corp., 686 F.2d 799, 803 (9th Cir.1982) ("[The creditor's] failure to present the [contingent] claim denied the bankruptcy court the opportunity to attempt to resolve the claims, and thus frustrated the policy of the Bankruptcy Act.")