In re Vincent LAPIANA and Barbara Lapiana, Debtors.

Vincent LAPIANA and Barbara Lapiana, Plaintiff,

v.

BANK OF RAVENSWOOD, et al., Defendants.

Bankruptcy Nos. 81–B–7077, 88–C–2336. Adv. No. 85–A–1231.

United States District Court, N.D. Illinois, E.D.

May 19, 1989.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

On January 25, 1988, Judge Schwartz of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, ("Bankruptcy Court") issued a Memorandum Opinion and Order holding that the Internal Revenue Service ("IRS") was not entitled to post-petition interest on its pre-petition oversecured tax claim against the estate of Vincent and Barbara LaPiana ("Debtors"). At the time of its decision, the Bankruptcy Court recognized that there was a split of authority over whether § 506(b) of the Bankruptcy Code, 11 U.S.C. § 506(b), authorized payment of post-petition interest to holders of nonconsensual lien claims, such as the tax claim asserted by the IRS in these proceedings. The Bankruptcy Court decided not to enter this debate and chose, instead, to rest its decision denying the IRS post-petition interest on equitable grounds. The Bankruptcy Court held that "[w]hile the IRS has every right to bring this claim for interest and penalties, ... it has slept on its rights by not taking steps to obtain disbursement from the former trustee." Memorandum Opinion and Order dated January 25, 1988 (hereinafter "Op.") at 8. Presently pending before the Court is the IRS' appeal of Judge Schwartz's decision.

Subsequent to the Bankruptcy Court's decision, the United States Supreme Court granted certiorari in *In re Ron Pair Enterprises, Inc.*, 828 F.2d 367 (6th Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 420 (1988), and agreed to resolve the question of whether § 506(b) entitles a creditor to receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding. This Court stayed its ruling on the fully-briefed appeal pending the Supreme Court's decision. On February 22, 1989, the Supreme Court held in *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), that § 506(b) does entitle a creditor to receive

post-petition interest on its nonconsensual oversecured claim. Thereafter, on February 25, 1989, this Court requested supplemental memoranda from the parties discussing the impact of the *Ron Pair* ruling on the pending appeal. *See* February 28, 1989 Minute Order. After reviewing the excellent legal memoranda submitted by the parties and for the reasons set forth below, the Court reverses the Bankruptcy Court opinion and remands for further proceedings consistent with this Opinion.

## II. THE BANKRUPTCY COURT PROCEEDINGS[1]

Prior to the commencement of the bankruptcy case, the Debtors jointly owned the beneficial interest in two parcels of real estate located at 30 Regent Lane, Lincolnshire, Lake County, Illinois (the "Regent Property") and 1586 Holiday Drive, Sandwich, LaSalle County, Illinois (the "Holiday Property"). In the adversary proceeding in the Bankruptcy Court, two secured creditors, the IRS and Millard G. Lee ("Lee"), asserted competing claims against the proceeds from the sale of the Regent Property.

Lee is the holder of a judgment lien against the Debtors in the amount of $497,392.60 obtained on August 18, 1980. After receiving his judgment, Lee recorded his lien on August 29, 1980 and served citations to discover assets on the Debtors on September 3, 1980. The Debtors subsequently filed a motion to open the August 18, 1980 judgment.

At the commencement of this case, the IRS held a claim against the Debtors arising out of the Debtors' failure to pay their 1979 income taxes. On August 25, 1980, the IRS made an assessment of the LaPiana's income tax liability for the year ended December 31, 1979 in the amount of $85,076.12. On December 31, 1980, and on January 2, 1981, the IRS filed its notice of federal tax lien with the Recorder of Deeds for Lake County and LaSalle County which listed $70,474.89 as the unpaid balance of assessment. The filing of these notices perfected the IRS' lien claims against both the Regent Property and the Holiday Property.

On June 15, 1981, the Debtors filed a voluntary joint Chapter 11 bankruptcy petition which was later converted, by order of the Bankruptcy Court dated June 3, 1982, from a Chapter 11 proceeding into a Chapter 7 proceeding. After the conversion, Lawrence M. Cooper was appointed trustee ("Trustee"). At the time the Debtors filed their petition, the IRS claimed a balance owed of $75,440.32 on its federal tax lien claim. This $75,440.32 consisted of $59,455.66 in principal, $9,142.13 in pre-petition interest, $20.00 in fees, and $6,822.53 in pre-petition penalties. The IRS maintained that interest and penalties continued to accrue, post-petition, on the principal amount of its tax claim.

On October 5, 1981, the Debtors filed an adversary complaint in the Bankruptcy Court for authority to sell the Holiday Property free and clear of liens, claims and encumbrances. Bankruptcy Judge Fisher authorized the sale of the Holiday Property for $200,000 and the payment of the mortgage liens with the sale proceeds, but reserved the issue of the priority of liens with respect to the $74,000 remaining proceeds. In the adversary proceeding, Lee had filed a crossclaim seeking a determination that he held a valid lien against the proceeds of that sale and that his lien was superior to that of the IRS. On June 16, 1983, Judge Fischer entered a judgment order holding that the IRS' lien was superior to Lee's lien and that Lee's lien was superior to the interests, if any, of the Debtors or the Trustee. *In re LaPiana*, 31 B.R. 738 (Bankr.N.D.Ill.1983). Judge Fischer reasoned that the Debtors' motion to open Lee's judgment had subordinated Lee's lien to that of the IRS. *Id.* at 743–44. On September 27, 1983, Judge Fischer entered an order authorizing and directing the Trustee to disburse the net proceeds from the sale of the Holiday Drive Property to the IRS.

1. The facts in this opinion are taken from Judge Schwartz's opinion, the IRS' statement of facts, *see* Brief of Appellant United States of America ("IRS Br.") at 2–5, and Lee's statement of facts. Brief of Appellee Millard G. Lee ("Lee Br.") at 2–5.

It was not until almost two years later, on May 27, 1985, that the Trustee, in compliance with the September 27, 1983 order, disbursed $60,000 to the IRS. The $60,000 disbursement was more than $14,000 less than the original proceeds available for distribution to the IRS. The Trustee was subsequently indicted for embezzling from the estate the balance of the Holiday Drive Property proceeds. A new trustee was appointed on June 30, 1987.

On October 9, 1985, the Debtors filed a complaint in Bankruptcy Court before Bankruptcy Judge Schwartz for authority to sell the Regent Lane Property free and clear of all claims with valid liens attaching to the proceeds. On October 31, 1985, the Bankruptcy Court entered an order authorizing the sale of the Regent Lane Property for $175,000 and reserved the issue of the priority of lien claims. The property was sold for $175,000 and the proceeds of the sale were used to pay off the first mortgage and an assignment of the Debtor's beneficial interest. The remaining proceeds in the amount of $72,122.27 were placed in a segregated interest-bearing account.

The IRS asserted a claim to the remaining proceeds. According to the IRS, the $60,000 from the sale of the Holiday Drive Property did not satisfy its claim against the Debtors. Although the principal balance of the 1979 tax liability, $59,455.66, had been extinguished, the IRS claimed it was entitled to pre-petition interest, penalties, and post-petition interest on the initial tax liability. Lee contended that the $60,000 payment satisfied the principal amount of the Debtor's tax liability and disputed the IRS's right to any post-petition interest. The only issue addressed by the parties before Judge Schwartz was whether the IRS was entitled to post-petition interest.

### III. THE BANKRUPTCY COURT OPINION

The Bankruptcy Court recognized the conflict among the authorities that had con-

sidered the question of whether oversecured federal tax lien claims accrue postpetition interest under the Code, but expressly chose not to enter this debate, finding it "unnecessary to do so on the facts" before it. Op. at 8. Instead, the Bankruptcy Court chose to balance the equities of the IRS and Lee, the two creditors competing for the Regent Property proceeds. In discussing the IRS' claim to the proceeds, the Bankruptcy Court stated:

If the IRS were granted its claim, it would receive over $132,000 on an initial tax liability of $63,674.72, while Lee would receive nothing. While the IRS has every right to bring this claim for interest and penalties, the Court notes that it has slept on these rights by not taking steps to obtain disbursement from the former trustee. The Internal Revenue Manual presently specifies procedures for the general monitoring and periodic review of bankruptcy cases in which the IRS has filed a claim.

Op. at 8–9. Contrasting Lee's actions with those of the IRS, the Bankruptcy Court stated:

Lee, on the other hand, took necessary steps to protect his right to collect from the Debtors. Having received his judgment on August 18, 1980, Lee served citations to discover assets on August 29, 1980. But for the fact that the Debtors moved to open the judgment, Lee's citation to discover assets would have established Lee's priority to the proceeds of both Holiday Drive and Regent Lane.

Op. at 9. Based on these circumstances, the Bankruptcy Court held that "it is fair that Lee share in the proceeds of Regent Lane." *Id.* The Bankruptcy Court awarded the IRS the balance of its pre-petition interest, $9,142, and its $20 lien fee, and subtracted $544.34, the excess of the $60,000 over the principal tax liability of $59,455.66.[2] The total payment to the IRS out of the Regent Lane proceeds authorized by

---

**2.** In its statement of facts, the IRS states the principal balance of its tax claim at the time the bankruptcy petition was filed as $59,452.60. In

his opinion, Judge Schwartz states the figure as $59,455.66. In light of its decision to reverse the Bankruptcy Court, the Court need not recon-

the Bankruptcy Court was $8,617.79, with the remainder of the proceeds to be paid to Lee.

## IV. DISCUSSION

Jurisdiction over this appeal is provided by 28 U.S.C. § 158(a). In its capacity as an appellate court on bankruptcy matters, the Court "performs an appellate rather than a fact-finding role" and must accept the bankruptcy court's findings of fact unless they are "clearly erroneous." *Matter of Evanston Motor Co., Inc.,* 735 F.2d 1029, 1031 (7th Cir.1984). The Court, however, is not so restricted in reviewing the bankruptcy court's conclusions of law, which the Court may independently examine and resolve. *Id. See also In re Dodd,* 82 B.R. 924 (N.D.Ill.1987) (bankruptcy court's conclusions of law are subject to *de novo* review).

The parties do not dispute the Court's jurisdictional basis to hear this appeal but they do dispute the applicable standard of review. Lee argues that the Bankruptcy Court's decision to deny the IRS' request for payment of post-petition interest must be sustained unless the Bankruptcy Court abused its discretion. The IRS argues that whether or not it is entitled to post-petition interest is a pure question of law which is independently reviewable by this Court on appeal. As will be discussed below, there is support for both positions in the law. The Court need not resolve this question, however, because it finds that even under the more stringent "abuse of discretion" standard, the Bankruptcy Court's decision in this case must be reversed. Nevertheless, some discussion of the support for the two standards of review is instructive.

The Seventh Circuit has held on several occasions that matters within the discretion of bankruptcy judges or district court judges will not be disturbed on appeal absent an abuse of discretion. *See, e.g., Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co.,* 841 F.2d 789 (7th Cir.1988) (district court judge's decision to deny investment banker's request for additional compensation for its services); *In re American Reserve Corp.,* 841 F.2d 159 (7th Cir. 1987) (bankruptcy judge's decision that a particular settlement is reasonable in light of "the best interest of the estate"); *Matter of Chung King, Inc.,* 753 F.2d 547 (7th Cir.1985) (bankruptcy court's decision to confirm or not to confirm sale). Lee cites *Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co.,* 830 F.2d 758, 762 (7th Cir.1987) for the proposition that the bankruptcy court's decision here to deny the IRS post-petition interest on its oversecured tax claim is a decision within the broad equitable powers of the bankruptcy court and is reversible only upon a showing that the bankruptcy judge abused his discretion. *Matter of Chicago, Milwaukee,* however, stands for no such proposition.

It is true that in *Matter of Chicago, Milwaukee,* the Seventh Circuit applied the abuse of discretion standard to affirm the district court's selection of an interest rate applicable to the IRS' *unsecured* tax claim (emphasis added). But the issue in *Matter of Chicago, Milwaukee* was whether the provisions of a proposed plan of reorganization were "fair and equitable" and provided for equal treatment of creditors. 830 F.2d at 761. The Bankruptcy Act contained a specific provision which vested within the district court the broad discretionary power to select a "fair and equitable" interest rate as part of its determination that the entire plan was "fair and equitable." *Id.* In that context, the Seventh Circuit held that the district court had broad discretion in weighing and balancing the equities in arriving at a "fair and equitable" rate of interest, and "did not abuse its discretion in so doing." *Id.* at 765.

Unlike *Matter of Chicago, Milwaukee,* the instant case is governed by § 506(b) of the Bankruptcy Code ("Code") and not the Bankruptcy Act ("Act"). Section 506(b) by its terms does not vest the court with broad discretionary powers to allow or disallow post-petition interest on an overse-

cile these figures here. Any discrepancy in these figures is to be reconciled on remand by

Bankruptcy Judge Schwartz.

cured claim. In fact, the plain language of Section 506(b) seems to preclude such discretion: "... there *shall be allowed* to the holder of such [oversecured] claim, interest on such claim ..." (emphasis added). Thus, the bankruptcy court's decision to allow or deny post-petition interest is neither a decision fully within the inherent discretion of the bankruptcy court nor a decision which is grounded in a statute specifically bestowing such discretion on the court.

Prior to the passage of the Code, bankruptcy courts did have broad discretion in deciding whether or not to award post-petition interest. *See Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946) ("the touchstone of each decision on allowance of interest in bankruptcy ... has been a balance of equities between creditor and creditor or between creditors and the debtor"). However, the passage of Section 506(b) and the Supreme Court's interpretation of that section in *Ron Pair* have significantly eroded, if not erased, any discretion previously left to bankruptcy judges.

Prior to *Ron Pair*, the Ninth Circuit had held in several cases relied upon by Lee that "awards and denials of post-petition interest" were matters of equity reviewable for abuse of discretion. *See In re Anderson*, 833 F.2d 834, 836 (9th Cir.1987); *In re Beverly Hills Bancorp*, 752 F.2d 1334, 1339 (9th Cir.1987). Even the Ninth Circuit recognized, however, that § 506(b) cut into the discretion previously afforded bankruptcy courts. *See, e.g., In re Anderson*, 69 B.R. 105, 108 (Bankr. 9th Cir.1986) ("Section 506(b) should be considered in conjunction with and as a restriction on, the usual governance provided by the inherent equitable power of the bankruptcy courts to determine how estate assets are to be distributed, including the validity of any claim for post-petition interest"), *aff'd*, 833 F.2d 834, 836 (9th Cir.1987) ("[a]lthough an award of postpetition interest is governed generally by the equities of the case, the Bankruptcy Code provided oversecured creditors with certain statutory rights [§ 506(b)] to interest"); *In re Mark Anthony Const., Inc.*, 78 B.R. 260, 262 (Bankr. 9th Cir.1987) ("[a]lthough the equitable approach that the award of post-petition interest is dependent upon the equities of the case is continued under the Code, the discretion vested in the bankruptcy court is not as broad since codification of § 506(b)"). After *Ron Pair*, however, it is unclear whether bankruptcy courts retain any discretion over whether an oversecured creditor is awarded post-petition interest.

In *Ron Pair*, the Supreme Court held that § 506(b) entitled the United States to post-petition interest on its oversecured claim for unpaid withholding and social security taxes. —— U.S. ——, 109 S.Ct. 1026 (1989). After considering the language of § 506(b), its legislative history, and pre-Code caselaw, the Court concluded that Congress intended that all oversecured claims, be they consensual (created by agreement between debtor and creditor) or non-consensual (judicial or statutory liens fixed by operation of law such as tax liens, judgment liens, and mechanics liens) are to be treated the same way for purposes of post-petition interest. *Id.* 109 S.Ct. at 1030, 1034. In so holding, the Court expressly rejected pre-Code caselaw which allowed post-petition interest only on consensual oversecured claims. The Court further rejected the equitable considerations upon which those decisions were in part based. Specifically, the Court acknowledged that "payment of post-petition interest is arguably somewhat in tension with the desirability of paying all creditors as uniformly as possible," but held that Congress "expressly chose to create that tension." *Id.* at 1033.

In light of *Ron Pair*, one of the two grounds upon which the bankruptcy judge rested his decision may no longer be viable. In his opinion, Judge Schwartz held that "[i]f the IRS were granted its claim it would receive over $132,000 on an initial tax liability of $63,674.72, while Lee would receive nothing." Op. at 8. As even the dissent in *Ron Pair* implicitly recognized,[?] the bankruptcy court may no longer be influenced in its decision to award or deny post-petition interest by the fact that "per-

mitting post-petition interest on nonconsensual liens drains the pool of assets to the detriment of lower priority creditors who are not responsible for the bankrupt's ability to pay and who cannot avoid the imposition of post-petition interest." 109 S.Ct. at 1037 (O'Connor, J. dissenting). Although this result may seem inequitable, the Supreme Court's reading of § 506(b) in *Ron Pair* divests the bankruptcy court of its equitable power to prevent it.

Nothing in *Ron Pair* speaks to the second equitable ground upon which Bankruptcy Judge Schwartz rested his decision—that the IRS "slept on its rights by not taking steps to obtain disbursement from the former trustee." Op. at 8. As Lee points out, however, there is some caselaw which suggests that a bankruptcy judge may reduce or eliminate post-petition interest where it proves that a senior secured creditor "intentionally" lengthens the proceedings to the detriment of a junior secured creditor. *In re Maimone*, 41 B.R. 974 (Bankr.D.N.J.1984). *See also Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir.1959).

In *Maimone*, a junior secured creditor brought before the bankruptcy court a motion to abate post-petition interest as to the senior secured claims, alleging, in part, that the senior secured creditors "intentionally or negligently allowed and encouraged the long delay during which accruing interest eliminated or almost eliminated any equity remaining for the junior secured creditors." 41 B.R. at 980. The delay at issue in *Maimone* involved a period of three years from the time the debtor filed its petition in bankruptcy until the date the subject property was sold and the proceeds were available for distribution. The Court denied the motion for abatement of post-petition interest, finding that the senior mortgagees were not responsible for the delay in the sale of the mortgaged property. The Court found that the senior secured creditors had "diligently sought from the beginning to obtain the funds they were entitled to" and noted that "[i]t would be an *unusual case* in which a junior secured credi-

tor could satisfactorily prove that the senior creditor intentionally lengthened the proceedings in order to collect interest at the expense of the junior creditor." *Id.* at 983 (emphasis added).

Even assuming that *Maimone* remains good law after *Ron Pair*, this is not the rare and unusual case contemplated by the *Maimone* Court. Judge Schwartz did not rest his decision on proof that the IRS intentionally prolonged the bankruptcy proceedings to collect interest on its claim. Judge Schwartz apparently decided that Lee was more diligent in his actions to protect his rights to collect from the Debtors than the IRS and thus more deserving than the IRS to share in the proceeds of the Regent Property sale. The Court believes that Judge Schwartz erroneously tilted the balance of the equities in favor of Lee by comparing the pre-petition actions of Lee with the post-judgment actions of the IRS. The actions taken by Lee which were favorably noted by Judge Schwartz were all taken pre-petition—serving citations to discover assets and recording its lien—while the lack of action for which Judge Schwartz condemned the IRS occurred after the Bankruptcy Court had ordered the Trustee to pay the IRS out of the Holiday Property proceeds. The IRS was just as diligent as Lee in taking steps pre-petition to perfect its tax lien and to obtain a priority over competing liens. These pre-petition steps led to the ultimate form of protection: an order of the court directing the former trustee to pay out the IRS' tax claim.

Comparing the post-judgment actions of Lee and the IRS, the Court finds that the Bankruptcy Court abused its discretion by placing the entire blame on the IRS for the Trustee's delay in complying with the Bankruptcy Court order directing the Trustee to pay the IRS. Even if the IRS is somehow blameworthy because the Internal Revenue Manual specifies procedures for the "general monitoring and periodic review of bankruptcy cases in which the IRS has filed a claim,"[3] Op. at 9, the Court

---

**3.** Bankruptcy Judge Schwartz based his decision that the IRS "slept on its rights" on certain

unspecified Internal Revenue Manual Procedures which required the IRS to monitor and

is not convinced that Lee and the other secured creditors are free from blame for allowing the Trustee's negligence to go unchecked. "[I]t is a fundamental concept in bankruptcy that a trustee's primary duty is to the unsecured creditors rather than the secured creditors." *In re Thu Viet Dinh*, 80 B.R. 819, 820 (Bankr.S.D.Miss.1987); *In re Nadler*, 8 B.R. 330 (Bankr.E.D.Pa.1980). In light of this well-established proposition, it is in the interest of all secured creditors to monitor the bankruptcy proceedings and the activities of the trustee to ensure that their interests remain protected. Although the Bankruptcy Court may still retain some discretion to reduce or eliminate post-petition interest, the extreme circumstances which on occasion have given rise to the use of such discretion are not present here.[4]

## V. CONCLUSION

The Court reverses the Bankruptcy Court's decision denying the IRS post-petition interest on its oversecured federal tax lien claim and remands this case to the Bankruptcy Court for a determination of that interest. Interest is to be calculated at the rate of interest fixed by 26 U.S.C. § 6621 of the Internal Revenue Code. *See In re Henzler Mfg. Co.*, 55 B.R. 194, 197 (Bankr.N.D.Ohio 1985); *In re Hoffman*, 28 B.R. 503 (Bankr.D.Md.1983); *In re Busman*, 5 B.R. 332 (Bankr.E.D.N.Y.1980).

---

review bankruptcy cases in which it filed a claim. Op. at 8–9. In a second Minute Order, dated April 21, 1989, the Court requested, among other things, that the parties provide the Court with a copy of the IRS guidelines relied upon by Judge Schwartz. After reviewing the guidelines supplied by the parties, the Court finds that the guidelines provide little support for Judge Schwartz's position. Although the guidelines do generally discuss IRS procedures for monitoring bankruptcy cases, there are no provisions which specifically require the IRS to make inquiry as to when a court-appointed trustee intends to comply with a court order.

4. Of all the cases cited by Lee, only one, *In re Magnus Harmonica Corp.*, 262 F.2d 515 (3d Cir. 1959), involved a court which applied equity principles to *eliminate* a secured creditor's claim for post-petition interest. *Magnus* involved an unusual situation in which a secured creditor had wrongfully imposed pre-petition charges against the debtor. Because the debtor failed to object timely to these charges, the trustee was unable to avoid the charges in the bankruptcy. *Magnus*, 262 F.2d at 517. Under these circumstances, where the secured creditor's claim arose from the *wrongful* action of the secured creditor, the Court invoked equitable principles to deny the creditor's claim for post-petition interest in its entirety (emphasis added). In *In re Advance Printing & Litho. Co.*, 277 F.Supp. 101 (W.D.Pa.1967) *aff'd per curiam*, 387 F.2d 952 (3d Cir.1967) (adopting district court opinion), the Third Circuit confined *Magnus* to its facts and limited the application of equitable principles to reduce post-petition interest to "extreme" factual circumstances. *See also Wolohan Lumber Co. v. Robbins*, 21 B.R. 747, 751 (Bankr.S.D.Ohio 1982) ("The Court is of the opinion, however, that such equitable power is discretionary, and should only be exercised upon a showing of *extreme circumstances* which are not indicated in the record instanter....") (emphasis in original). As discussed above, the IRS's claim is not the result of any "wrongful" activity on its part and the record does not establish the "extreme" factual circumstances which justify the use of equity to eliminate the IRS's claim for post-petition interest.

The Court has not taken lightly Lee's claim that he should not be punished for the Trustee's failure to pay the IRS' claim on time. Indeed, the Court has canvassed the case law for decisions in which the trustee's dilatoriness has caused harm to the parties. In its Minute Order dated April 21, 1989, the Court directed the parties to discuss *In re Irvin*, 95 B.R. 1014 (Bankr.W.D.Mo.1989), a case in which the bankruptcy court, on equitable grounds, discharged the debtors from the IRS' claim for interest where the trustee delayed paying the IRS for nearly two years and the interest which accrued on the IRS' claim equaled the amount of the original claim. After reviewing the supplemental memoranda supplied by the parties, the Court agrees with the IRS that the reasoning of the *Irvin* court is on shaky ground in light of decisions both within and outside its Circuit.